Damon Kirk WILKINS *v.* STATE of Arkansas

CR 95-1020 918 S.W.2d 702

Supreme Court of Arkansas
Opinion delivered April 1, 1996

*Hatfield & Lassiter*, by: *Jack T. Lassiter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Sr. Appellate Advocate for appellee.

TOM GLAZE, Justice. Appellant Damon Wilkins appeals from his conviction of capital felony murder and the underlying felony, attempted aggravated robbery, for which he was sentenced to life without parole. The state alleged that, on January 16, 1994, Wilkins, along with his co-defendants, Milton Terrance Anderson and Timothy Laplez Davis, committed or attempted to commit aggravated robbery, and in the course of and furtherance of this felony, caused the death of Detra Bolden, under circumstances manifesting extreme indifference to the value of human life. Wilkins raises four points for reversal, but we first review the pertinent facts.

On the evening of January 16, 1994, Wilkins, Anderson, Davis and friends were spending the night at the residence of Mary Howard. At trial, several of those spending the night at the Howard residence testified to hearing Wilkins, Anderson and Davis talking about robbing someone. The three left the residence together, but Wilkins returned to the house about an hour later, followed shortly thereafter by Anderson and Davis. Several witnesses testified that upon Wilkins's return to the Howard residence, he stated that he had shot the victim, Detra Bolden. Furthermore, state testimony showed that after Anderson and Davis returned, they, too, stated that Wilkins had shot Detra.

Anderson testified on behalf of the state with the understanding that in exchange for his truthful testimony the state would recommend that he would be sentenced to twenty-five years in the Arkansas Department of Correction. His testimony was consistent with that of the other state witnesses. Anderson admitted that, while at the Howard residence he, Wilkins and Davis had discussed wanting to rob someone. At the suggestion of Wilkins, the three agreed and formed a plan to rob Joyce "Big Mama" Mance, who, it was believed, sold marijuana. When they arrived at Big Mama's, Anderson entered the home alone where he asked Big Mama for some marijuana. She asked that he come back later. Anderson returned outside and told Wilkins that there was a lot of "weed" on the table, and Wilkins wanted to go get it, but Davis refused. At that time, Big Mama's daughter, Detra Bolden, who had been inside, leaned out the door. Anderson testified that Wilkins pulled his gun and shot at her, though Anderson admitted that he did not actually see Detra shot. Anderson and Davis ran. The three met at Anderson's house, "smoked a joint," then made their way back to the Howard residence. Wilkins arrived first, having gotten a ride from a friend while Anderson and Davis were on foot.

Wilkins testified that he did not shoot Detra, nor did he go with Anderson and Davis to Big Mama's house after they left the Howard residence. He admitted planning to rob someone, but asserted he refused to rob Big Mama. He denied admitting to anyone that he had shot Detra. He said that after leaving the Howard residence that evening, he went to Anderson's house, and later caught a ride with Ardell Washington, who took Wilkins back to the Howard residence. Wilkins testified that he told the people there that he did not know where Anderson and Davis were, but

that he had received a ride from Washington. Wilkins testified that he went to sleep sometime before Anderson and Davis had returned to the house.

After the state filed its charges against Wilkins, Wilkins raised the affirmative defense set forth at Ark. Code Ann. § 5-10-101(b) that he was not the only participant and did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission. He further raised the affirmative defense found in Ark. Code Ann. § 5-2-404(b), arguing that he terminated his complicity of effectiveness in the commission of the offense.

The day before the trial, Wilkins filed a motion for continuance, requesting he be given more time to locate Ardell Washington, whom Wilkins characterized as an alibi witness. Wilkins offered evidence that he had searched for weeks to determine Washington's whereabouts, but to no avail. The court denied his motion, and that denial is the subject of his first point on appeal.

■■ On review, it is well settled that a motion for continuance is addressed to the sound discretion of the trial court, and the court's decision will not be reversed absent an abuse of discretion. *Hill* v. *State*, 321 Ark. 354, 902 S.W.2d 229 (1995). We cannot say that the trial court's denial of the continuance was an abuse of discretion.

Motions for continuance are governed in part by Arkansas Rule of Criminal Procedure 27.3, which provides:

> The court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case.

This court has denoted the following factors to be considered by a trial court in deciding a continuance motion:

> (1) the diligence of the movant, (2) the probable effect of the testimony at trial, (3) the likelihood of procuring the attendance of the witness in the event of a postponement, and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true.

*Hill*, 321 Ark. 354, 902 S.W.2d 229; *Cloird* v. *State*, 314 Ark. 296, 862 S.W.2d 211 (1993); *French* v. *State*, 217 Ark. 445, 609 S.W.2d 42 (1980).

Wilkins contended that Washington's testimony became more important and the continuance necessary when he discovered a few days before trial that Anderson had agreed to be a state witness, and would testify he saw Wilkins pull the trigger. He claims this revelation should somehow justify more time to locate Washington. We see little merit in this argument as Washington's alibi testimony was always relevant and needed in rebutting the several other witnesses' testimony that Wilkins had admitted to killing Detra. Moreover, Wilkins admitted that Washington had given fictitious addresses, and he offered no evidence or likelihood Washington could be procured even if a continuance was given. In such circumstances, the trial court had the discretion to deny Wilkins's request for postponement. *Ray* v. *State*, 304 Ark. 489, 803 S.W.2d 894 (1991); *Doles* v. *State*, 280 Ark. 299, 657 S.W.2d 538 (1983).

Next, Wilkins argues that the trial court erred in denying his motion for a mistrial. The state's witness, Detective Janice Jensen, testified on direct examination that, after Wilkins was arrested, Wilkins was transported to the North Little Rock Police Department, where Jensen advised him of his *Miranda* rights. At this point, Wilkins objected, stating that Jensen's testimony, without more, suggested to the jury that Wilkins offered no response after his rights were given. Wilkins argued this suggestion was violative of Wilkins's due process rights under *Doyle* v. *Ohio*, 426 U.S. 610 (1976), because it was an improper reference to Wilkins's silence. The state, on the other hand, claimed it should have been permitted to proceed further to elicit Wilkins's statement that when arrested, he admitted to guilt, by stating at the time of his arrest that the state could not prove a case against him. The trial court sustained Wilkins's objection, holding his statement was not an admission. It then denied Wilkins's mistrial motion, but ruled the state could go no further with its questions.

From *Doyle*, we learn that it is fundamentally unfair and a deprivation of due process to implicitly assure a suspect that his silence will not be used against him and then allow that silence to be used to impeach an explanation subsequently offered at trial. *Id.* Here, Jensen's testimony showed Wilkins had been provided the

implicit assurance of *Miranda* warnings, but the trial court disallowed any specific inquiry, argument or emphasis concerning Wilkins's silence. This absence of the use of Wilkins's silence for impeachment purposes precluded any *Doyle* violation. *See Greer* v. *Miller,* 483 U.S. 756 (1986); *Holden* v. *State,* 290 Ark. 458, 721 S.W.2d 614 (1986). In sum, the court did not permit the type of inquiry forbidden by *Doyle.* Instead, it sustained Wilkins's objection thereby preventing the state from asking further questions that might have eventually touched upon Wilkins's silence.

■■ Before leaving this issue, we also point out that a mistrial is a drastic remedy which should be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial or where any possible prejudice cannot be removed by admonishing the jury or some other curative relief. *Bullock* v. *State,* 317 Ark. 204, 876 S.W.2d 579 (1994). An admonition is the proper remedy where the assertion of prejudice is highly speculative. *Banks* v. *State,* 315 Ark. 666, 869 S.W.2d 700 (1994). Again, the absence of prejudice becomes apparent here in light of the fact that there was neither direct testimony in reference to Wilkins's silence, nor did Wilkins's attorney attempt to cure any alleged prejudice with a request for an admonition. This court has held that the failure to request a cautionary instruction or admonition may not inure to the appellant's benefit on appeal. *Stanley* v. *State,* 317 Ark. 32, 875 S.W.2d 493 (1994).

Wilkins's third point on appeal stems from a portion of the prosecutor's remarks during closing argument when explaining the juror's consideration of lesser included offenses. The prosecutor stated, "That's what the lesser included instructions are about. It's not until all twelve of you decide that he's not guilty of capital murder and aggravated robbery that you can go any lower than what the state's charged the defendant." Wilkins's attorney objected to the prosecutor's remarks as being an improper characterization of the law. He argued that, if the jurors are unable to agree on a verdict as to the greater offense, then they can proceed to the lesser offense. Wilkins's objection was overruled.

The instruction given by the trial court was AMCI 2d 302, Lesser Included Offenses: Transitional Instruction. Specifically, the instruction was Wilkins's requested instruction No. 3, and the court's instruction No. 14:

If you have a reasonable doubt of the defendant's guilt on the charge of capital murder, you will then consider the charge of murder in the first degree.

■ Here, the jury unanimously found that Wilkins was guilty of the greater charge of capital murder. Therefore, it is a fair inference that no jury member had a reasonable doubt as to Wilkins's guilt. Because no jury member had a reasonable doubt, even under Wilkins's characterization of the instruction, the jury could not have proceeded to the next lower offense. Therefore, the argument cannot be made that Wilkins was prejudiced by the prosecutor's characterization of the instruction, and this court does not reverse without a showing of unfair prejudice. *Easter v. State*, 306 Ark. 615, 816 S.W.2d 602 (1991).

The last point on appeal is that the trial court erred in denying Wilkins's pretrial motion to transfer his case to juvenile court. Wilkins was fifteen years of age at the time of Detra's murder and sixteen years old at the time of the hearing. Under Ark. Code Ann. § 9-27-318(b)(1) (Repl. 1993), the state had the discretion to file capital murder charges against Wilkins in circuit court. When the state files such charges against a defendant who was fifteen years old at the time he or she committed the alleged capital murder at issue, the circuit court is to hold a hearing in order to determine whether to retain jurisdiction over the case or transfer it to juvenile court. Ark. Code Ann. § 9-27-318(b)(2) (Repl. 1993).

■■ The circuit court, in deciding whether to transfer a case to juvenile court, must consider the following requirements:

(1) the seriousness of the offense and whether the juvenile employed violence in the commission of the crime; (2) whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; (3) the prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation.

Ark. Code Ann. § 9-27-318(e) (Repl. 1993). *Macon v. State*, 323 Ark. 498, 915 S.W.2d 273 (1996). As the party seeking the transfer, Wilkins had the burden of proof to show a transfer was warranted.

*Ring* v. *State*, 320 Ark. 128, 894 S.W.2d 944 (1995). Proof need not be introduced against the juvenile on each factor. *Macon*, 323 Ark. 498, 915 S.W.2d 273. In making its decision, the trial court is not required to give equal weight to each of the statutory factors. *Id.* The serious and violent nature of an offense is a sufficient basis for trying a juvenile as an adult. *Id.* If a trial court determines a juvenile should be tried in circuit court as an adult, its decision must be supported by clear and convincing evidence. Ark. Code Ann. § 9-27-318(f) (Repl. 1993). *Ring*, 320 Ark. 128, 894 S.W.2d 944. This court will not reverse a circuit court's denial of a juvenile transfer unless the denial was clearly erroneous. *Id.*

 Both the state's charges and testimony reflect Wilkins was involved in the serious offense of capital felony murder, and he employed a gun in committing the offense. The record clearly supports the trial court's decision, denying Wilkins's motion to transfer his case to juvenile court.

As required by Ark. Sup. Ct. R. 4-3(h), the record has been reviewed for other reversible error, and none is found. For this and the reasons stated above, we affirm.