Michael CAGLE, Jr. *v.* STATE of Arkansas

CA CR 99-343                                                6 S.W.3d 801

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered December 15, 1999

*Baim, Gunti, Mouser, Robinson & Havner,* by: *Greg Robinson,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Kelly S. Terry,* Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant in this criminal case was charged with first-degree murder in connection with the death of Chis Odom. Although questions relating to appellant's intent and state of mind were sharply disputed at his jury trial, there was no serious dispute concerning the events that transpired. There was evidence that appellant was romantically involved with Karen Castleberry, and that Ms. Castleberry had previously dated the victim. The appellant, Ms. Castleberry, and another friend went to a tavern on October 3, 1997. The victim was present at the tavern. Appellant played pool, and afterwards asked the victim to discuss something with him in the alley. After they grappled for a short time, appellant shot the victim twice. Appellant, Ms. Castleberry, and their friend left hastily in Ms. Castleberry's auto. Shortly afterward the auto was stopped by a policewoman. Appellant leapt out of the auto before it had fully stopped and fled. Ms. Castleberry and the other friend were taken into custody. They gave statements implicating appellant, who was apprehended soon afterward. At trial, appellant admitted shooting the victim, but testified that he was being choked by the victim and shot him in self-defense because he feared for his life. Appellant was convicted

of first-degree murder and sentenced to forty years' imprisonment. From that decision, comes this appeal.

For reversal, appellant contends that the trial court erred in denying his request for a mistrial on the grounds that the prosecution improperly commented on his right to remain silent. Appellant also contends that the trial court erred in failing to prevent spectators at the trial from wearing buttons bearing the photograph of the victim, and in refusing to admit evidence showing that the victim had methamphetamine in his system at the time of his death. We affirm.

■■■ We first consider appellant's argument that the trial court erred in denying his request for a mistrial on the grounds that the prosecution has improperly commented on his right to remain silent. Although it is true that the prosecution is prohibited from commenting on a defendant's post-arrest, post-*Miranda* warning silence, *Doyle v. Ohio*, 426 U.S. 610 (1976), the prosecutor's comment in the case at bar was in the context of appellant's testimony that he shot the victim and fled from police because he was afraid. The prosecutor's question, "Did it ever cross your mind to stop and tell the police the truth?" was directed specifically to impeaching appellant's explanation of the reason for his flight — *before* he was Mirandized — and we think that *Doyle* therefore does not apply. *See Fletcher v. Weir*, 455 U.S. 603 (1982). However, even if the prosecutor's question were capable of being understood as going toward appellant's post-*Miranda* silence, we would not agree that a mistrial was mandated. The Arkansas Supreme Court has held that a limiting instruction will suffice to cure a *Doyle* violation where, as here, the possible prejudice could have been cured by an admonition to the jury. *McFarland v. State*, 337 Ark. 386, 989 S.W.2d 899 (1999). Similarly, in *Wilkins v. State*, 324 Ark. 60, 66, 918 S.W.2d 702, 705-706 (1996), the Arkansas Supreme Court said that:

> [A] mistrial is a drastic remedy which should be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial or where any possible prejudice cannot be removed by admonishing the jury or some other curative relief. *Bullock v. State*, 317 Ark. 204, 876 S.W.2d 579 (1994). An admonition is the proper remedy where the assertion of prejudice is highly speculative. *Banks v. State*, 315 Ark. 666, 869 S.W.2d 700 (1994). Again, the absence of prejudice becomes apparent here in light of the fact that there was neither direct

testimony in reference to Wilkins's silence, nor did Wilkins's attorney attempt to cure any alleged prejudice with a request for an admonition. This court has held that the failure to request a cautionary instruction or admonition may not inure to the appellant's benefit on appeal. *Stanley v. State*, 317 Ark. 32, 875 S.W.2d 493 (1994).

We hold that any prejudice resulting from a misunderstanding of the prosecutor's question would likely have been cured by an admonition, and that the trial court therefore did not err in denying appellant's motion for a mistrial. *See Muldrew v. State*, 331 Ark. 519, 963 S.W.2d 580 (1998).

■ Next, appellant contends that the trial court erred in refusing to prohibit the spectators from wearing buttons bearing a photograph of the victim. Although we are not unsympathetic to this argument, we are unable to address it on the record before us. None of the buttons or the images portrayed on them are in the record; furthermore, there is no evidence in the record regarding the jurors' reactions to the buttons. As we said in *Kenyon v. State*, 58 Ark. App. 24, 34-35, 946 S.W.2d 705, 710-11 (1997):

> [I]t has not been demonstrated that the jury saw the badges being worn by some spectators or, if they did, that this affected their ability to be fair jurors. Also, it is not clear that the jury members, if they saw that some people were wearing badges, could tell what was on them. Appellant did not question the panel with regard to whether they saw the buttons and could tell what they were and whether this would influence their ability to sit fairly on the jury. Appellant has not demonstrated prejudice, as is necessary in order for this court to reverse, *Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1985 (1985), and has failed to demonstrate that the trial court abused its discretion in denying his motion for mistrial.

The appellant in the present case has likewise failed to demonstrate prejudice, and we must therefore affirm on this point.

■ Finally, appellant argues that the trial court erred in excluding evidence that the victim had methamphetamine in his system at the time of his death. Appellant argued that, because the victim had a powerful and dangerous drug in his system, appellant was right to be afraid for his life, and therefore was justified in killing the victim in self-defense. This argument might be merito-

rious if there had been any evidence to show that appellant knew that the victim was taking methamphetamine, or that the victim's behavior was such that appellant could reasonably have inferred the victim was under the influence of the drug. However, no such evidence appears in the record. We think that the evidence of methamphetamine in the victim's blood was only conditionally relevant to the question of appellant's state of mind and, the other conditions not having been shown, it was not error to exclude it. *See* Ark. R. Evid. 104(b).

Affirmed.

JENNINGS, BIRD, STROUD, and NEAL, JJ., agree.

ROAF, J., dissents.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse and remand this case for a new trial because the trial court erred in overruling Mr. Cagle's objection relating to the presence of spectators at the trial who were wearing buttons with the victim's picture on them. The trial judge refused to take any action whatsoever, and accordingly, I do not agree with the majority that Cagle should be required to demonstrate prejudice under these circumstances.

In the course of the two-day trial, the victim's family members showed up wearing buttons with the victim's picture on them. On the first day, Cagle requested that the judge order the family to remove the badges, but the trial court refused, and stated that he "found nothing particularly prejudicial about it." On the second day, Cagle again objected to the presence of the button-wearing spectators, claiming that there were many more and that they were strategically stationed at the courthouse entrances and exits. The trial judge ordered the prosecution to tell the victim coordinator to make them move if they were "posted around the courthouse," but declined to "dictate" what the spectators could or could not wear.

Cagle argues that the presence of spectators who were wearing buttons with the victim's picture on them denied him his right to a fair trial. He contends that the instant case is not controlled by *Kenyon v. State*, 58 Ark. App. 24, 946 S.W.2d 705 (1997), a case in which this court, confronted by a similar situation where spectators were wearing buttons bearing one of the victims' pictures, affirmed

the trial court's denial of a mistrial motion made midway through *voir dire,* because Kenyon could not demonstrate prejudice where he had declined the trial court's invitation to question the jurors to determine if they saw the buttons and were affected by them. Cagle contends that his case is distinguishable because of the "outrageous number" of buttons and paraphernalia posted throughout the courthouse, which, unlike *Kenyon,* remained throughout the whole trial because of the trial judge's failure to intervene, and because the trial judge failed to give him an opportunity to question the jury to determine the prejudicial effects of the paraphernalia. Finally, in his reply brief, Cagle urges this court to find the presence of spectators wearing victim badges so inherently prejudicial as to constitute an "impermissible risk of prejudice." *See Holbrook v. Flynn,* 475 U.S. 560 (1986)(holding the presence of four uniformed and armed state troopers stationed in the first row of a trial of six armed robbery co-defendants was not so inherently prejudicial as to constitute an impermissible risk of prejudice). Portions of Cagle's argument have merit.

Central to the issue of a fair trial is the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Clemmons v. State,* 303 Ark. 265, 795 S.W.2d 927 (1990)(quoting *Taylor v. Kentucky,* 436 U.S. 478, 485 (1978)). Spectator misconduct can be grounds for reversal. *See generally* Jay M. Zitter, Annotation, *Disruptive Conduct of Spectators in Presence of Jury During Criminal Trial As Basis For Reversal, New Trial, or Mistrial,* 29 A.L.R.4th 659.

I reject Cagle's assertion that *Kenyon* is distinguishable because the number of button-wearing spectators was greater in the instant case, because *Kenyon* is silent as to the number of individuals wearing badges. Also unpersuasive is Cagle's contention that *Kenyon* is distinguishable because the trial judge failed to give him an opportunity to question the jury to determine the prejudicial effects of the paraphernalia. The record indicates that Cagle did not assert this right at trial, which was his duty to do. *See Williams v. State,* 17 Ark. App. 173, 705 S.W.2d 896 (1986). Moreover, Cagle now contends on appeal that it would be "most unpractical" to conduct such an inquiry because it would draw attention to presence of the buttons on the spectators.

However, *Kenyon* is distinguishable in one crucial respect: the trial judge did not take any steps to stop the spectators from wearing the buttons inside the courtroom. While it is true that on the second day of the trial the trial judge instructed the prosecutor to limit the exposure of the jurors to spectators who were allegedly stationed throughout the courthouse, because it was "bad taste," he refused to order the spectators to remove the buttons and instead stated that he was "not going to dictate what they can wear." In this key respect, this case is very different from *Kenyon*.

While I have not found an Arkansas case that reverses and grants a new trial because of spectator misconduct, apparently this is because the trial judge in almost every such case took appropriate action. *See Solomon v. State*, 323 Ark. 178, 913 S.W.2d 288 (1996); *Venable v. State*, 260 Ark. 201, 538 S.W.2d 286 (1976); *Bradshaw v. State*, 206 Ark. 635 (1944); *Pendergrass v. State*, 157 Ark. 364 (1923); *Zinn v. State*, 135 Ark. 342 (1918); *Rhea v. State*, 104 Ark. 162 (1912). The only contrary authority is *Jackson v. State*, 245 Ark. 331, 432 S.W.2d 876 (1968), in which the trial court denied the defendant's mistrial motion without further action, when during a lunch break, six jurors had seen the mother of the victim crying in the courtroom. However, this case is not entirely inconsistent with the other cases due to the brief exposure of only a portion of the jury to the situation, which apparently resolved itself before the trial judge was apprised of it. Even something as prejudicial as seeing a defendant in shackles will not be found to be inherently so if it is nothing more than a brief, inadvertent exposure. *Hill v. State*, 285 Ark. 77, 685 S.W.2d 495 (1985) (citing *United States v. Carr*, 647 F.2d 867 (8th Cir.1981)).

*Kenyon v. State, supra,* certainly is consistent with these cases inasmuch as the problem had apparently been eliminated by the prosecutor asking the spectators to remove the badges even before the defense brought the problem to the trial court's attention. While the trial judge in *Kenyon* denied the defendant's mistrial motion, which was made midway through *voir dire*, when the trial had not yet commenced, he nonetheless offered the appellant an opportunity to prove it was warranted, which the defendant apparently refused. In *Kenyon,* the trial judge was clearly exercising discretion, so the extreme remedy of a mistrial was not warranted. *See also People v. King*, 544 N.W.2d 765 (Mich. App. 1996)(holding that the trial court did not err in denying a mistrial where wearing

the three-inch diameter buttons was ordered stopped by the trial court on what was likely the only day they were worn); *Mitchell v. State*, 884 P.2d 1186 (Okla. Crim. App.1994)(trial court ordered family members to remove pre-crime photographs of victim, ordered the buttons they were wearing removed when they simply pulled the picture off them, and threatened to have any spectator removed and held in contempt for failure to comply with court orders); *State v. Bradford*, 864 P.2d 680 (Kan. 1993)(trial court ordered buttons removed as soon as it was brought to his attention). Certainly this would have been a different case if the trial judge had ordered the badges removed, which is apparently all that Cagle requested. Moreover, to require Cagle to demonstrate prejudice in a situation where the trial court found the badges "not particularly prejudicial," and in effect overruled his objection, is illogical.

In *Norris v. Risley*, 918 F.2d 828 (9th Cir. 1990), the Ninth Circuit reversed the denial of a writ of *habeas corpus*, finding that the presence of spectators wearing buttons inscribed with the words "Women Against Rape" was inherently prejudicial and denied the defendant a fair trial. Similarly, in *State v. Franklin*, 327 S.E.2d 449 (W. Va. 1985), a case cited by the Ninth Circuit in *Risley*, the West Virginia Supreme Court held that the obvious presence of badge-wearing members of Mothers Against Drunk Drivers did irreparable damage to the defendant's right to a fair trial and the trial court's failure to take action was reversible error. In the instant case, there was a similar refusal to take action over the course of a two-day trial, and Cagle was likewise denied a fair trial as a consequence.

I respectfully dissent.