Eve Elaine LAWSON *v.* STATE of Arkansas

CA CR 00-671 47 S.W.3d 294

Court of Appeals of Arkansas
Division II
Opinion delivered June 20, 2001

*Cathleen V. Compton*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. Appellant Eve Elaine Lawson was charged with first-degree murder. A jury convicted her of second-degree murder, and she was sentenced to twenty years in the Arkansas Department of Correction. She appeals the conviction based upon the following alleged errors by the trial court. First, she contends that because she is deaf, she was entitled to the assistance of an interpreter before the police took her statement and at the

hearing on her motion to suppress her statement. She also contends that she was denied effective assistance of counsel because her attorneys failed to secure rights to the assistance of an interpreter and because her attorney did not present evidence during the sentencing phase. In addition, she contends that the prosecutor violated her Fifth Amendment rights against self-incrimination when he informed the jury during his opening statement that Lawson would be stating that the crime was committed in self-defense. She also contends that she is entitled to a new trial because improper contact between a juror and the family of the victim deprived her of her right to an impartial jury. And, she contends that her Sixth Amendment rights were violated because of her trial attorney's conflict of interest. We affirm.

On May 20, 1998, Lawson was arrested for the murder of Russell Lynn Rogers. She gave a statement to police that day admitting that she had shot Rogers in the head, but contending that she did so after he kidnapped her and mentally abused her. She stated that she was scared to leave Rogers's home because he would find her and kill her. After she shot him, she went to Rogers's neighbors' house and told them what had happened and asked to use the phone to call the police. In this statement, she contends that she called the police and told them what had happened. Before her trial, Lawson moved to suppress the statement, contending that the statement was not freely made because she was under extreme duress and confusion at the time she was interrogated by the police.

The court conducted a hearing on Lawson's motion to suppress. Alex Sylvester, a criminal investigator with the Arkansas State Police, was the first to testify and stated that prior to conducting the interview, in which Lawson's statement was made, he advised Lawson of her *Miranda* rights. He stated that Lawson freely and voluntarily discussed the shooting with him, describing in detail what occurred at Rogers's residence the night of the shooting. Sylvester stated that he took Lawson's statement in a small room and that he did not have any difficulty communicating with her and that she could hear him "fine." Sylvester stated that when Lawson made the statement, the tape recorder did not work initially and, therefore, only half of Lawson's statement was recorded.

Joan Demmitt, an Arkansas State Trooper, testified that she transported Lawson to jail on the night of the shooting, but that she did not question Lawson. She stated that she was present when Lawson's rights were read to her.

Dewayne Luter, an investigator with the state police, testified that he was present during Lawson's interview and was present when she was advised of her rights. He stated that Lawson did not ask for the interview to cease or request an attorney.

James Isham, the sheriff of Scott County, testified that he went to Rogers's home on May 20 to investigate the shooting after the dispatcher contacted him regarding the incident. He then read the dispatcher's report into evidence. The report stated that the dispatcher, Michael Oakes, had received a call about a homicide on May 20 from Nicole Falconer, in which Falconer informed Oakes that Lawson had told her that she shot Rogers. The dispatcher asked Falconer to ask Lawson to come to the phone. Lawson identified herself to Oakes and then asked him to speak louder, telling him that she was hearing-impaired. Lawson informed Oakes that she had been abducted by Rogers, that Rogers had been abusive, and that she had shot him in the head.

Lawson was present at the suppression hearing. Her counsel did not ask for, nor was she provided, the assistance of an interpreter. The court denied her motion to suppress.

In the prosecutor's opening statement, he stated to the jury:

> Now, as you're aware, the defendant in this case, Eve Lawson, is charged with the first-degree murder of Russell Rogers. The State alleges that on or about May 20th of 1998, the defendant, with the purpose of causing the death of another person, did in fact cause the death of Russell Rogers. The evidence is going to show that the defendant placed a .22 caliber four-shot Derringer to the victim's head, Russell Rogers, while he was asleep in his bed at his residence. Now the defendant would have you believe that this was in self-defense.

Lawson objected to this statement and moved for a mistrial, contending that she had not yet decided whether to testify and that the prosecutor's statement was going to force her to testify, in violation of her constitutional right not to have to testify. The court denied the motion, stating that the prosecutor should clarify that he was referring to what Lawson had said in her statement.

During the trial, Lawson was provided assistance for her hearing impairment. At the trial, there was testimony from Oakes, the dispatcher, who stated again that Lawson had informed him that she

had shot Rogers in the back of the head. Jason Daggs, a deputy sheriff for the Scott County Sheriff's office, testified that he responded to a call concerning a shooting at Rogers's residence. He testified that when he arrived at the scene, he was met by Lawson, who informed him that she had shot Rogers. James Isham, sheriff, testified that when he arrived at the trailer where Rogers lived, Lawson surrendered to the police.

Sylvester testified at trial, again stating that Lawson was advised of her *Miranda* rights and indicating that she understood them before giving her statement. Sylvester then testified regarding Lawson's statement. He stated that she had told him that Rogers had kidnapped her, that he had verbally abused her and had knocked her against a table, and that she admitted killing Rogers. He stated that at no time did Lawson state that she had been sexually abused by Rogers. In addition, she stated that Rogers had asked her "to take that gun and shoot him and take him out of all of his pain."

Jason Falconer, a neighbor of Rogers, testified that Lawson had come to his home asking to use the phone and stating that she had shot Rogers. Nicole Falconer, Jason's wife, also testified that Lawson had informed her that she had shot Rogers.

Lawson testified that she was abducted by Rogers and sexually abused for three days before she killed him. She also stated that she had a hearing impairment and that she had informed officials throughout the proceeding of her impairment. She stated that while she was giving her statement, the officers asked her questions that she could not really understand. She stated that part of the time, she could not hear the questions.

The jury found Lawson guilty of second-degree murder, and she filed a motion for a new trial. After moving for and being granted substitution of counsel, Lawson filed an amended motion for a new trial, contending that because she was deaf, she was entitled to an interpreter at the time of her arrest; that she was entitled to an interpreter at all stages of her criminal proceeding, including the suppression hearing; that during the trial, a juror was repeatedly speaking to members of the victim's family; that Lawson's trial attorney had a conflict of interest because of his concerns about his son's election to the office of prosecuting attorney; and that she had not received effective assistance of counsel as there were no witnesses presented on her behalf at the sentencing phase of the trial. Attached to the motion was an affidavit by Jerry Parker

in which he stated that during Lawson's trial he observed a juror talking to Rogers's family on several occasions.

A hearing on Lawson's motion for a new trial was held. John Everett, an attorney, testified that because Lawson's first attorney did not raise the issue of her hearing impairment at any stage of the proceeding, specifically in the motion to suppress, she received ineffective assistance of counsel. He also stated that it appeared that her second counsel, trial counsel, had a conflict of interest in representing her. In addition, Everett stated that it was "most unusual for some evidence not to be presented at the sentencing stage, assuming Lawson had no history of violence, no propensity for violence, and no record."

Everett testified that Lawson is deaf and that the only way someone is able to communicate with her is by speaking "directly and distinctly and loudly where she can see you, see your lips, she can pick it up, most of it. But if you're not facing her, if you're speaking in normal, conversational tones, and particularly if you're not facing her, she doesn't have a clue what you are saying."

Lawson's mother, Flora Belle Lawson, testified that her daughter contracted encephalitis that caused her hearing loss when she was a teenager. She said that she went to the police station the day of the shooting and informed the police that her daughter could not hear. She also testified that she was not in the courtroom when her daughter was found guilty because she expected to testify but was not called as a witness.

Juanita Scroggins, Lawson's aunt, testified that she saw a juror speak to members of the victim's family, but that she did not hear what was said. She also testified concerning Lawson's hearing impairment.

Tom Tatum, Sr., testified that he was Lawson's trial attorney. He stated that during his first meeting with Lawson, he learned that she had a hearing loss and that she could not hear certain tones, but that he would not consider her to be deaf. He stated:

> When we got down to trial time I wanted to make sure that Lawson was afforded the opportunity to hear everything that was going on in the courtroom. That's when I petitioned the court to

ask the court for some special assistance. We tried the amplification, got the equipment. Eve told me that that wouldn't work. So I came up with this "real-time" idea, which worked real well for her.

He also stated that during the trial he made a statement to a friend of his, "Am I losing any votes?" He said that the statement was an "old joke that goes way, way back," and he stated that at the time of the trial, no election was taking place. In addition, he stated that the comment by the prosecuting attorney that Lawson was going to claim self-defense did not affect her decision to testify and that she had already decided to testify.

Sylvester testified at the hearing on the motion for a new trial that he was not made aware by dispatcher Oakes that Lawson had a hearing problem. He stated that she informed him that he needed to face her so that she could read his lips, but that she understood what he was saying. He stated that she did not indicate that she could not understand him. He stated that when she gave her statement, the room was quiet with no distractions, and Lawson was sitting real close to him. He stated that he felt that she could understand everything that he was saying. In addition, he stated that Lawson did not ask him to speak up. The court denied Lawson's motion for a new trial, and she brings this appeal.

For her first point on appeal, Lawson contends that because she was hearing-impaired, she was entitled to an interpreter before the police took her statement. She states that she informed the police that she had a hearing impairment and that her statutory rights under Ark. Code Ann. § 16-89-105 (1987) were violated when the police took her statement without providing her with the assistance of an interpreter.

■ When a denial of a motion to suppress is challenged, we make an independent determination based upon the totality of the circumstances. *Welch v. State*, 330 Ark. 158, 955 S.W.2d 181 (1987). We reverse only if the denial is clearly against the preponderance of the evidence. *Id.*

Arkansas Code Annotated section 16-89-105(c) states that a person is entitled to assistance when he is *deaf and in-custody*, rather than someone who is *hearing-impaired and the subject of a criminal trial*, which is covered under Ark. Code Ann. § 16-89-104(a) (1987) and will be discussed later in this opinion. Section 16-89-105(c) states:

> In the event a person who is deaf is arrested and taken into custody for any alleged violation of a criminal law of this state, the arresting officer and his superiors shall procure a qualified interpreter in order to properly interrogate the deaf person and to interpret the person's statement. No statement taken from the deaf person before an interpreter is present may be admissible in court.

■ ■ Arkansas Code Annotated section 16-10-127(e)(1) (Repl. 1999) defines a deaf person as "a person with a hearing loss so great as to prevent his understanding language spoken in a normal tone." In *Hollamon v. State,* 312 Ark. 48, 55, 846 S.W.2d 663, 667 (1993), the supreme court found no error in the trial court's use of the *Black's Law Dictionary,* 6th ed. (1990), definition of a "deaf person" as "any person whose hearing is totally impaired or so seriously impaired as to prohibit the person from understanding oral communications when spoken in a normal conversational tone."

■ Lawson contends that she should have been provided the assistance of an interpreter when her statement was taken because she is considered to be deaf under the statutory definition and the definition in *Hollamon* and because she informed the police that she was hearing-impaired before her statement was taken and when her statement was taken. The State contends that she did not object to this below and, therefore, her argument is not preserved for appeal. We agree that her argument is not preserved. In her motion to suppress, she made no mention of the fact that her statement should be suppressed because she was hearing-impaired. *Britt v. State,* 334 Ark. 142, 974 S.W.2d 436 (1998); *McNeely v. State,* 54 Ark. App. 298, 925 S.W.2d 177 (1996).

■ Even if this argument were preserved for appeal, her abstract does not demonstrate that she presented proof that she is deaf. We agree that the abstract is replete with testimony that Lawson suffers from a hearing loss. However, she has offered no evidence that her hearing loss would qualify her as deaf under either the *Hollamon* or the statutory definition. Lawson has not shown that she could not understand oral communications when spoken in a normal conversational tone. Even though Lawson had stated to the dispatcher and the investigating officers that she was hearing-impaired, she gave no indication to the officers that she did not understand them or the proceedings. In addition, Sylvester, the investigating officer who took Lawson's statement, testified that even though she informed him that she was hearing-impaired, she

did not appear confused, she had no trouble communicating, and she appeared to be able to hear him. In addition, after she told the dispatcher that he needed to speak up, because she was hearing-impaired, she gave no indication that she had trouble answering the questions that followed. After her *Miranda* rights were read to her, Lawson initialed the form showing that she understood them. There was no testimony from any of these officers that they were not speaking in a normal conversational tone.

For Lawson's second point on appeal, she contends that because she was not provided the assistance of an interpreter during the hearing on her motion to suppress, her constitutional and statutory rights were violated. Arkansas Code Annotated section 16-89-104(a) states, in pertinent part,

> (a) Every person who cannot speak or understand the English language or who because of hearing, speaking, or other impairment has difficulty in communicating with other persons, and who is a defendant in any criminal action or a witness therein, shall be entitled to an interpreter to aid the person throughout the proceeding.

Lawson argues that because she informed the police officers that she had a hearing impairment, she was entitled to assistance at the suppression hearing. She argues that because she was not provided an interpreter, this court must reverse her conviction. She asserts that in *People v. Doe*, 602 N.Y.S.2d 507 (1993), the court reversed a conviction of an appellant who was not provided assistance and held, "A defendant is entitled to hear 100% of the proceedings." Lawson asserts that she had a hearing loss far greater than that suffered by the defendant in *People v. Doe, supra*.

The State contends that Lawson's argument is not preserved for appeal in that she did not make this argument below. We agree with the State because at no time did Lawson object to the proceedings, contending that she was deaf. An appellate court will not consider an argument that was not presented to the trial court. *Tucker v. State*, 336 Ark. 244, 983 S.W.2d 956 (1999); *Britt v. State, supra; Tabor v. State,* 333 Ark. 429, 971 S.W.2d 227 (1998); *McNeely v. State, supra.*

For her third point on appeal, Lawson contends that she was denied effective assistance of counsel because her attorneys did not

secure an interpreter at the suppression hearing, which was a violation of her statutory and constitutional rights, and that because of this violation she is entitled to a new trial. Lawson contends that an interpreter should have been secured for her during the suppression hearing and that her attorneys should have moved to suppress the statement because an interpreter was not secured. She argues, "The suppression of that statement would have completely altered the manner in which the state attempted to prosecute [her], and the absence of the statement in evidence would have rendered it likely that [she]would not have testified, and would not have been convicted."

In accordance with *Strickland v. Washington*, 466 U.S. 668 (1987), when claiming that she received ineffective assistance of counsel, an appellant must show that her counsel's conduct was deficient and that the deficient conduct was prejudicial. To prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). This requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must also show that the deficient performance prejudiced his defense; this requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id*. Unless the petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id*.

The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. To rebut this presumption, the appellant must show that there is a reasonable probability that, but for counsel's errors, the fact finder would have had a reasonable doubt respecting guilt, *i.e.*, that the decision reached would have been different absent the errors. *Id*. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id*. In making a determination on a claim of ineffectiveness, the totality of the evidence before the fact-finder must be considered. *Id*. The reviewing court will not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Id*.

Under the test established in proving ineffective assistance of counsel, Lawson must show that her attorney was deficient,

making errors so serious that he was not functioning as counsel. We agree that because there was evidence that Lawson suffered from a hearing impairment, pursuant to Ark. Code Ann. § 16-89-104(a), she should have been provided an interpreter to aid throughout the proceeding. However, we cannot say that the outcome would have been different had an interpreter been provided. In other words, Lawson has not shown that there is a reasonable probability that the jury would have had a reasonable doubt respecting guilt. Lawson admitted to the Falconers, to the dispatcher, and to the police that she shot Rogers. Based upon the totality of the evidence before the jury, we cannot say that the absence of the interpreter undermined the confidence in the outcome of the trial.

 Lawson also contends that she received ineffective assistance of counsel because her attorney failed to call any witnesses during the sentencing phase of the jury trial. She argues that her counsel was ineffective in that he did not provide witnesses during the sentencing phase that Lawson had no prior history of violence, had an excellent character, had overcome a serious illness, and had coped with a serious hearing disability. Decisions regarding witness testimony are matters of trial strategy. *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000). A lawyer's choice of trial strategy that proves ineffective is not a basis for meeting the test for ineffective assistance of counsel. *State v. Slocum*, 332 Ark. 207, 964 S.W.2d 388 (1998). In *Pyle v. State, supra*, the supreme court held that absent a showing of how the witnesses could have changed the outcome of the trial, there was not a claim for ineffective assistance of counsel when a defendant's attorney did not call certain witnesses during the sentencing phase. In the case at bar, Lawson has not shown that the testimony of the witnesses, including her mother and aunt who were ready to testify, would have changed the outcome of the trial.

 For her fourth point on appeal, Lawson contends that her Fifth Amendment right against self-incrimination was violated when the prosecutor stated in his opening statement that she was relying on self-defense as a defense to the charge. Lawson objected, moving for a mistrial. The court denied the motion. On appeal, she contends that by making this statement, the prosecutor forced her to testify. Our standard of review in granting a mistrial was stated in *Gaines v. State*, 340 Ark. 99, 113, 8 S.W.3d 547, 556 (2000):

> A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of

the trial itself has been manifestly affected. The trial court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. [Citations omitted.]

▮ The prosecution in a criminal case is prohibited from commenting on a defendant's post-arrest, post-*Miranda* warning silence. *Doyle v. Ohio*, 426 U.S. 610 (1976). However, we do not find that the prosecutor's comment in his opening statement was a violation of *Doyle*, in that the prosecutor's comment was based upon evidence that he expected to be produced at trial, *i.e.*, Lawson's statement given to the police in which she alleged that she was kidnapped and abused. *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996).

▮ Also, as the State points out, even if we found that the prosecutor's comment was a *Doyle* violation, a mistrial should not be granted because a limiting instruction to the jury would cure any prejudice. *See Cagle v. State*, 68 Ark. App. 248, 6 S.W.3d 801 (1999). The failure to request a cautionary instruction should not inure to the appellant's benefit on appeal. *Id*. In the case at bar, Lawson did not request a cautionary instruction.

▮ For her fifth point on appeal, Lawson argues that improper contact between a juror and a member of the victim's family deprived her of her right to an impartial jury. She argues that improper contact between a juror and a family member of the victim is presumptively prejudicial and requires a new trial. The burden was on the appellant to prove that a reasonable possibility of prejudice resulted from juror misconduct, and prejudice is not presumed in such situations. *Dillard v. State*, 313 Ark. 439, 855 S.W.2d 909 (1993). Whether unfair prejudice occurred is a matter for the sound discretion of the trial court. *Id*.

Lawson filed with her motion for new trial an affidavit given by Jerry Parker, who stated that he saw a member of the jury talk with the family of the victim on several occasions during the trial. He stated that he did not know what was being said and that he just assumed the communication was to members of the victim's family. Glen Stanfield, the victim's stepfather, testified that he was not aware that a juror spoke with any member of the family. Juanita Scroggins, Lawson's aunt, stated that she saw a juror talking with members of Rogers's family, but that she did not know the juror's name or what she said.

■ The testimony of these witnesses does not demonstrate that any prejudice resulted. In fact, it was not proven that a juror spoke with the family. Parker simply testified that he just assumed that the juror was talking to the family members. In addition, Scroggins did not know what the juror said to the family. Therefore, we find that the court did not abuse its discretion in finding that Lawson had failed to prove that the contact, if any, by a juror with the family of the victim was inappropriate or in violation of the court's admonishment to the jury.

For Lawson's sixth and final point on appeal, she contends that her Sixth Amendment rights were violated by a conflict of interest on the part of her trial counsel. She maintains that during a break at the trial, her counsel, Tom Tatum, Sr., was overheard asking Don Frost, a relative of the victim, "Am I losing any votes?" She states, "This [sic] significance of this comment arose from the fact that trial counsel's son was entering a contested race for the position of county prosecutor, and defense counsel was worried that his representation of Lawson might impact negatively on the success of his son's election campaign."

■ In order for Lawson to be granted postconviction relief when alleging a conflict of interest, she must prove that an actual conflict of interest existed and that the conflict adversely affected her. *Myers v. State*, 333 Ark. 706, 972 S.W.2d 227 (1998). Lawson notes that, for relief to be granted, she has to show that the established conflict of interest actually affected the adequacy of the representation. *Dawan v. Lockhart*, 31 F.3d 718 (8th Cir. 1994).

■ Tatum testified that he was not involved in a campaign at the time of the trial and that the comment was an old private joke between himself and a friend. We cannot say that the court erred in finding that Lawson has not proven that her trial counsel had an actual conflict or that she was prejudiced by the comment or the alleged conflict.

Affirmed.

BAKER and ROAF, JJ., agree.