Cite as 2021 Ark. App. 172

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II
**No.** CR–20–215

| | | |
|---|---|---|
| ERSKINE FLAMER, JR. | | **Opinion Delivered:** April 21, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CR-19-189] |
| V. | | |
| | | HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | REVERSED AND REMANDED |

## RAYMOND R. ABRAMSON, Judge

Appellant Erskine Flamer, Jr., was convicted by an Ashley County jury of second-degree murder and tampering with physical evidence. Flamer was sentenced to fifty years in the Arkansas Department of Correction and a $2500 fine for the murder conviction and three years' imprisonment and a $500 fine for tampering with physical evidence. The circuit court ordered the sentences to run concurrently. On appeal, Flamer argues the circuit court erred in denying his motion for mistrial after the State disclosed—during jury deliberations—that two pocketknives were found on the victim following his death at the hospital. We agree and reverse and remand.

The facts at trial established that Flamer and Deunte Stanley were involved in an altercation at a city park in Hamburg, Arkansas, on July 21, 2019. Flamer arrived first with his three-year-old son. Flamer's girlfriend and his son's mother, Laporsha Franklin, was also

at the park that day and testified at trial that Stanley approached Flamer and started shoving and threatening him. Testimony indicated that Stanley was the initial aggressor.

During the shoving, Stanley reached into his pocket with his free hand, and witnesses heard Stanley threaten Flamer saying, "You better kiss your son goodbye." After Stanley pushed him several times, Flamer "poked" Stanley. Witnesses, including Franklin's mother, Gelena Mooney, testified that they did not realize Stanley had been stabbed until he lifted his shirt and they saw blood. Stanley then collapsed and later died after being transported to the hospital in Crossett, Arkansas.

Flamer did not testify at trial, but the State played a video of his statement taken by the Hamburg Police Department. In the video, Flamer stated he was afraid of Stanley during the altercation, and he was in fear for his life after he saw Stanley's hand move in his pocket. He also stated that he did not mean to kill him and became distraught when officers informed him that Stanley had died.

The existence of the two pocketknives found on Stanley's person was not included in any of the police reports or witness statements. There was no evidence introduced by any party or witnesses that Stanley was armed. The assumption was that he was unarmed. The defense was unaware of the pocketknives until the State disclosed it during jury deliberations. Defense counsel immediately requested a mistrial.

The jury had been instructed on self-defense, which is a defense only if Flamer "reasonably believed that Deunte Stanley was using or about to use unlawful, deadly, physical force." In arguing his motion for mistrial, Flamer contended that the pocketknives were relevant to his defense and that at trial, he would have relied on the fact that Stanley

2

had been armed. The circuit court did not grant the mistrial and proceeded with the case, indicating that he wanted "to see what the jury would do."

The jury returned guilty verdicts of murder in the second degree and tampering with physical evidence, and Flamer was sentenced. At the conclusion of the proceedings, defense counsel renewed his motion for a mistrial that was again denied by the circuit court. Flamer's sole argument on appeal is that the circuit court abused its discretion by denying his motion for mistrial.

The general standard for mistrial is well established. We have said in a myriad of cases that the grant of a mistrial is a drastic remedy and rests within the discretion of the circuit court. A mistrial is an extreme remedy appropriate only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *See McClinton v. State*, 2015 Ark. 245, at 2–3, 464 S.W.3d 913, 914. The circuit court's decision will not be reversed absent an abuse of discretion or manifest prejudice to the moving party. *Id.* Declaring a mistrial is proper only when the error is beyond repair and cannot be corrected by any curative relief. *Gould v. State*, 2016 Ark. App. 124, 484 S.W.3d 678.

Such is the case here. Because the evidence was not disclosed to Flamer until the jury was already deliberating, the error is beyond repair. There is a fundamental difference between the killing of an unarmed person versus an armed person—regardless of the nature of the deadly weapon employed. In the instant case, the entire tenor of the defense was affected by the absence of the armed-victim evidence. Accordingly, we hold that the circuit court abused its discretion in denying Flamer's motion for mistrial.

The dissent maintains that the evidence concerning the pocketknives was not relevant and would not have been admissible, and therefore, the outcome of the trial would not have been different. However, the existence of the pocketknives found in the victim's pocket following the incident is paramount to this case. There was testimony from several witnesses that Stanley was the aggressor, he threatened Flamer, and Stanley put his hand in his pocket during the altercation. That the victim was armed bears significantly on every aspect of the case.

But the admissibility of the pocketknives is not for our court to decide because it is not argued on appeal, and we have no clear ruling from the circuit court on the issue. In the colloquy between the parties and the court after the State had disclosed the knives had been found, the parties did not argue admissibility of this evidence; rather, they argued the motion for a mistrial. In denying the motion, the court stated:

> So, the Court is uncertain as to whether or not it would have even been admissible, the existence of the two pocketknives, unless the fact they were in his pocket had been communicated to the defendant and he had reason to believe that he was armed with one or two pocketknives.
>
> . . . .
>
> Well, it's an issue for me to determine if something is clearly irrelevant. I'm saying that I doubt that I would have allowed it into evidence. I am subject to change my mind.

There is no formal ruling regarding the admissibility of the pocketknives from the circuit court, and there are no posttrial briefs regarding the evidence's admissibility.

At the stage of the trial when the State made the disclosure to the court—jury deliberations—all the evidence had been introduced. Any ruling on admissibility by the court at that time would have been too late. The evidence ship had sailed. Discussion by

4

the circuit court after the case had been submitted to the jury was purely academic and theoretical; any ruling would have been hypothetical and advisory. The lower court should have the opportunity to hear full and fair argument from both parties on the issue of admissibility before ruling.

In this appeal, our court is solely charged with deciding whether the denial of the motion for mistrial was made in error. The standard is clear—a mistrial is appropriate only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *See McClinton, supra.* In light of the record before us, it is evident that the entire defense would have changed had the knives been disclosed in a timely manner. The nondisclosure prevented Flamer from using that knowledge at trial.

The presence of the pocketknives supports Flamer's and his witnesses' testimony that the victim went for his pocket before Flamer stabbed him, which bolsters his self-defense argument. The missing evidence lends credibility not only to Flamer's entire case, but also to his position when confronting prosecution witnesses. Without the evidence, the going-for-his-pocket statements could have been dismissed as gratuitous. The State benefited from the absence-of-evidence scenario and took advantage of it by attacking the self-defense argument. Specifically, in closing argument, the prosecutor stated:

> You have to determine that Erskine Flamer reasonably believed that Deunte Stanley was using or about to use unlawful, deadly, physical force. He claims he had his hand in his pocket. I guess you're all justified in killing me right now because I'm touching my phone if you believe that.
>
> . . . .

And they have not proven that to you at all. The only evidence that you have that he thought that he was in danger is said something about–he believes he shot somebody else before. No proof of that, no evidence of that–and he even said, I don't know if it's right–and he had his hand in his pocket. So I submit to you there's no time that you can use self-defense as a defense just because somebody has their hand in their pocket. They have to do something more. They have to say to you or indicate to you that they're armed and they intend to kill you. Otherwise, you're unreasonable.

If the existence of the pocketknives had been disclosed, the prosecutor would have been foreclosed from making such an argument. In denying the motion for mistrial, the circuit court did not address the unfair advantage given to the State or, conversely, any disadvantage or prejudice the defense may have experienced from the nondisclosure of the knives. Whether the pocketknives would have been admissible is not up to this court to decide in this appeal, but the manifest effect of the untimely disclosure is.

We conclude that a mistrial was required in this case. The fact that this evidence was not disclosed until jury deliberations is an error so prejudicial that justice could not be served by continuing with the trial. A mistrial was the appropriate remedy here because the fundamental fairness of the trial was manifestly affected when this evidence came to light, and we hold that the circuit court abused its discretion in refusing to grant a mistrial. Flamer's convictions must be reversed, and we remand this case for a new trial.

Reversed and remanded.

GRUBER, VAUGHT, and MURPHY, JJ., agree.

KLAPPENBACH and BARRETT, JJ., dissent.

STEPHANIE POTTER BARRETT, Judge, dissenting. I respectfully dissent from the majority's decision to reverse and remand this case to the circuit court for a new trial because I believe that the pocketknives are not admissible, and as a result, the result of the

proceeding would not have been different. Therefore, it was not an abuse of discretion to deny the request for a mistrial.

A mistrial is a drastic remedy that should be granted only when justice cannot be served by continuing the trial. *Dixon v. Scott*, 2011 Ark. 450, 385 S.W.3d 164. The circuit court has the sound discretion to decide whether to grant a mistrial, and this decision will not be overturned absent a showing of abuse or upon manifest prejudice to the complaining party. *Id.* Circuit courts have broad discretion in deciding evidentiary issues, and their rulings on the admissibility of evidence are not reversed on appeal absent an abuse of discretion. *Halliburton v. State*, 2020 Ark. 101, 594 S.W.3d 856. Because the circuit court's denial of a mistrial was based on its determination that the pocketknives were not admissible as evidence, the issue of admissibility must be addressed.

Under Arkansas law, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Ark. R. Evid. 403. Evidence that is relevant to explain the act, show a motive, or illustrate the accused's state of mind may be independently relevant and admissible. *Turner v. State*, 2018 Ark. App. 5, 538 S.W.3d 227. Arkansas Rule of Evidence 104(b) states, "Whenever the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or in the court's discretion subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." In this case, although there was testimony that Flamer was afraid because

7

Stanley was known to carry a gun, there was no evidence to show that Flamer knew Stanley was carrying pocketknives.

The circuit court determined that the pocketknives would not have been admissible unless the fact they were in Stanley's pocket was known to Flamer, which it was not. The court stated:

> First, you start from the premise that your client did not testify, that from your client's viewpoint can only be expressed from – – Can only be inferred from what he stated to the police.
>
> . . . .
>
> No other witness can attribute his state of mind or give an opinion as to his state of mind. Now, the reasonableness of that state of mind is based upon what he – – How he described the events to Officer Ethridge. And he at no time said, I saw him with a knife, I saw a knife outlined in his pocket, or I saw the form of a knife. The only thing he mentioned was pistol. So there's nothing in his version of the events, which he gave to the officer, to justify the stabbing of the victim. There's nothing in his version other than he was going in his pocket and he had heard he had shot somebody before but didn't know why. So the Court is uncertain as to whether or not it would have even been admissible, the existence of the two pocketknives, unless the fact they were in his pocket had been communicated to the defendant and he had reason to believe that he was armed with one or two pocketknives. If he had said that to the officer, I hear he carries a pocketknife, big pocketknife, or I saw the outline – – He had on tight pants and I saw the outline of a pocketknife when he slid his hand in there, then what they discovered later insofar as pocketknives would tend to corroborate the reasonableness of his belief. So I'll back up and look at it, analytically, if, let's say, granted, two small pocketknives were found. How does that affect the reasonableness of his belief or is that simply fortuitous? In other words, would I have allowed the existence of them in his pocket to be put into evidence anyway? Now, certainly if they had been steak knives sticking out of the victim's pocket, and he saw it, and they didn't disclose the steak knife to you then that would be different. But carrying a pocketknife, as I am doing right now, which most men do, is not necessarily suggestive of the intent to use it on another person.

The fact that Stanley had two small pocketknives located in his trousers is not relevant to the self-defense argument. Nothing in the testimony suggests Flamer knew Stanley had any knives on his person or believed he might have a knife. Because he had no actual

knowledge or belief that Stanley was armed with a knife, the fact that Stanley had two pocketknives is simply not relevant; if not relevant, then it is not admissible, which was the basis of the circuit court's denial of Flamer's motion for mistrial. The majority assumes that the knives were located in the same pocket Stanley had his hand in. However, there is nothing in the record to reflect that. An officer stated to the court that the knives were among the personal belongings given to officers by hospital staff and were immediately returned to Stanley's family.

The majority reasons that if the existence of the pocketknives had been disclosed, the prosecutor would have been foreclosed from making certain arguments in closing. I disagree. There is nothing factually inaccurate about the prosecutor's statements in closing. The claim that Stanley had his hand in his pocket and that Flamer feared he had a gun came into evidence. He cannot now claim that he was fearful of knives he had no knowledge of. A reasonable belief that deadly physical force is being used or about to be used takes something more than putting your hand in your pocket, regardless of the existence of pocketknives, even if they were, in fact, located in the same pocket. It would take communication of a threat of death or some other indication that deadly physical force was about to be used. There simply was no evidence of such in this case. It is also important to note that Flamer and the witness who testified that she heard the victim state "[y]ou better kiss your son goodbye" both gave statements to police but did not make such statements to the police. The fact that this statement was brought out for the first time at trial was made evident to the jury through testimony. Furthermore, other witnesses testified that Flamer had his back to Stanley when he was pushed and that Flamer turned to stab

Stanley. The jury weighs the credibility of conflicting testimony and may find from the testimony that Flamer's allegation that Stanley had his hand in his pocket, which made him fearful for his life, is not credible if he had his back to Stanley and was unable to see his hands.

The existence of a weapon is analogous to the existence of drugs or alcohol in the body of the victim. This court in *Cagle v. State*, 68 Ark. App. 248, 6 S.W.3d 801 (1999) held:

> Finally, appellant argues that the trial court erred in excluding evidence that the victim had methamphetamine in his system at the time of his death. Appellant argued that, because the victim had a powerful and dangerous drug in his system, appellant was right to be afraid for his life, and therefore was justified in killing the victim in self-defense. This argument might be meritorious if there had been any evidence to show that appellant knew that the victim was taking methamphetamine, or that the victim's behavior was such that appellant could reasonably have inferred the victim was under the influence of the drug. However, no such evidence appears in the record. We think that the evidence of methamphetamine in the victim's blood was only conditionally relevant to the question of appellant's state of mind and, the other conditions not having been shown, it was not error to exclude it. *See* Ark. R. Evid. 104(b).

The Arkansas Supreme Court reintegrated this reasoning in *Stanton v. State*, 2020 Ark. 418, 613 S.W.3d 368, and held that the victim's intoxication was not admissible due to the defendant's lack of knowledge. The defendant's state of mind is at issue—whether it is his knowledge of drug and alcohol use of the victim or weapons possessed by the victim. The defendant cannot change his belief at the time of the event upon learning afterward that the victim was armed, regardless of whether it was after the event or after the trial.

Under Arkansas law, a prosecutor has a duty to learn of any favorable information known by others acting on the government's behalf, including the police, and must disclose the information in sufficient time to permit the defense to make beneficial use of it. *Figueroa*

*v. State*, 2016 Ark. App. 30, at 2, 480 S.W.3d 888, 890. When the prosecutor fails to provide information, the burden is on the defendant to show that the omission was sufficient to undermine confidence in the outcome of the trial. *Id.* That is, when the petitioner contends that material evidence was not disclosed to the defense, the petitioner must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 2, 480 S.W.3d at 889. Here, the outcome of the trial would not have changed because the pocketknives were not admissible. As discussed above, the existence of the pocketknives was not relevant because there was no evidence Flamer knew or believed that Stanley was carrying a knife.

The majority also claims that the discussion by the circuit court regarding the admissibility of the pocketknives was purely academic and theoretical. However, in determining whether a mistrial is the appropriate remedy, the circuit court has the duty to weigh the facts and the law. The circuit court has a duty to determine if there exists manifest prejudice to the defense. In order to make that determination, the circuit court must take into account whether the evidence brought to light would even be admissible in the first place, or whether such evidence would have changed the outcome of the trial. At any time, the court is tasked with determining if the outcome of the trial would be different, the thought process would always be academic or theoretical, and the resulting ruling would be hypothetical in nature.

Because the pocketknives were not admissible, and the outcome of the trial would not change, I cannot say that the circuit court abused its discretion or that Flamer was manifestly prejudiced.

KLAPPENBACH, J., agrees.

*Chuck Gibson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael L. Yarbrough*, Ass't Att'y Gen., for appellee.