2014 Ark. App. 171

**Tyrone James CAMPBELL, Appellant**

**v.**

**STATE of Arkansas, Appellee.**

**No. CR–12–782.**

Court of Appeals of Arkansas.

March 12, 2014.

Mosemarie Dora Boyd, Van Buren, for appellant.

Dustin McDaniel, Att'y. Gen., by: Laura Shue, Ass't. Att'y. Gen., for appellee.

PHILLIP T. WHITEAKER, Judge.

Appellant Tyrone Campbell was charged with one count of first-degree terroristic threatening and one count of aggravated assault. A Sebastian County jury acquitted Campbell of the aggravated-assault charge but convicted him of first-degree terroristic threatening. The jury sentenced Campbell to six years' suspended imposition of sentence and to pay $1000 in restitution. We affirm.

The charges against Campbell stemmed from a series of incidents involving his wife's work supervisors, Joe White and Chris Gosch. After his wife was fired from a Fort Smith Taco Bell, Campbell drove to the Taco Bell, where he drove his car at White and Gosch at a high rate of speed and made a slashing motion across his neck at the two men. He subsequently told a Taco Bell corporate secretary to tell the two men that "someone is going to die tonight." Campbell does not challenge the sufficiency of the evidence on appeal. Instead, he assigns error to the circuit court's denial of his motion for new trial (raising several separate arguments as to jury misconduct and one argument as to witness exclusion). In addition, Campbell argues that the circuit court erred in denying his request to instruct the jury on the lesser-included offense of second-degree terroristic threatening and that the court erred by failing to admonish the jury in response to allegedly inflammatory comments made by the prosecutor during voir dire and opening arguments. Finally, Campbell raises an argument that cumulative error warrants a new trial.

## I. *New Trial Motion*

The decision whether to grant or deny a new trial lies within the sound discretion of the trial court, and this court will reverse that decision only if there is a manifest abuse of discretion. *Smart v. State*, 352 Ark. 522, 104 S.W.3d 386 (2003); *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002). A trial court's factual determinations on a motion for a new trial will not be reversed unless clearly erroneous, and the issue of witness credibility is for the trial court to weigh and assess. *Smart, supra.*

## A. Jury Misconduct

Campbell's first three arguments on appeal pertain to alleged errors in the circuit court's denial of his motion for new trial based on claims of juror misconduct. Because they are somewhat intertwined, we address them together.

Following allegations of juror misconduct, the moving party bears the burden of proving that a reasonable possibility of prejudice resulted from any such juror misconduct. *Holloway v. State*, 363 Ark. 254, 213 S.W.3d 633 (2005). The appellate courts will not presume prejudice in such situations. *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002). Jurors are presumed to be unbiased and qualified to serve, and the burden is on the appellant to show otherwise. *Holloway, supra.* Whether prejudice occurred is a matter for the sound discretion of the circuit court. *Id.*

Juror misconduct may require a new trial. The threshold issue, however, is whether the evidence of that misconduct is admissible under Arkansas Rule of Evidence 606(b). Rule 606(b) provides that a juror may not testify as to any matter or statement occurring during the course of deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict, or concerning his mental process in connection therewith. Nor may a juror's affidavit or evidence of any statement by him be received on such

matters. Ark. R. Evid. 606(b) (2012). A juror may, however, testify about whether "extraneous prejudicial information" was improperly brought to the jury's attention or whether any "outside influence" was improperly brought to bear on any juror. *Id.* Rule 606(b) embodies the public interest in preserving the confidentiality of jury deliberations and ensures that jury deliberations remain secret unless it becomes clear that the jury's verdict was tainted by a showing of extraneous prejudicial information or some improper outside influence. *Milner v. Luttrell,* 2011 Ark. App. 297, 384 S.W.3d 1; *Waste Mgmt. of Ark., Inc. v. Roll Off Serv., Inc.,* 88 Ark.App. 343, 199 S.W.3d 91 (2004).

Campbell asserts that one of the jurors, Anthony Pearn, read an alternative written jury instruction during deliberations. This claim is based on an allegation by another juror, William Bish. Bish reported that Pearn had read an instruction on terroristic threatening that was not the same as the model instruction given to the jury by the court.

The circuit court heard testimony from Pearn and the jury foreman, James Phelps. Both jurors denied that they or any other juror brought an alternative jury instruction into the jury's deliberations. Both were adamant that the only instructions considered by the jury were those provided by the court.

Their testimony, however, was contradicted by Bish, who stated that Pearn had read an instruction from "a single sheet of paper." This instruction, which was not the same as the model instruction given by the court, allegedly explained that terroristic threatening "means all that matters is that the victims felt that they were threatened. It doesn't matter what the defendant's intent was." Bish admitted, however, that he had never actually read the instruction himself. He acknowledged that he had heard the court read the instructions to the jury and conceded that he did not remember if those instructions "were word for word the same as what was read in the jury room." He further claimed that he believed the instruction read by Pearn "came out of the same packet the judge had given us because I never saw it come from anywhere else. I mean, I didn't see anyone bring any other descriptions or bring their own paperwork in there or whatever."

To the extent that Campbell complains that an extraneous instruction was physically interjected into the jury's deliberations, the circuit court made no factual findings to that effect. It is an appellant's burden to obtain a clear ruling on an issue from the trial court. *Dixon v. State,* 2011 Ark. 450, 385 S.W.3d 164; *Turner v. State,* 2012 Ark. App. 150, 391 S.W.3d 358. Absent such a ruling, there is nothing for this court to review. *Dixon, supra.* Accordingly, we do not address Campbell's argument on this point.

Campbell alternatively asserts that Pearn verbalized inaccurate information to the jury pertaining to the definition of terroristic threatening. Essentially, Campbell alleges that Pearn improperly invoked his knowledge of criminal law during voir dire, such that his "qualifications and credentials readily impl[ied] that he is an expert on the subject of terroristic threatening, which likely caused other jurors to believe him." Campbell challenges the jury's purported reliance on Pearn's expertise in the field of criminal law.

Again, the circuit court heard testimony from Pearn, Phelps, and Bish about this alleged inaccurate information and purported reliance. Bish said that the jury had a lengthy discussion of the terroristic-threatening charge. He stated that the description of terroristic threatening that

the jurors discussed was "that it is not what the intent or what was exactly said, it is how the victim feels." Pearn admitted that he participated in the discussion of the definition of terroristic threatening, but he "thought that that was the purpose of our deliberations" and that it was "based on the instruction that we were given." Pearn denied being any more influential than any of the other jurors.

Campbell then attempted to ask Pearn whether he had ever summarized the law on terroristic threatening as focusing on the perception of the victim, rather than the intent of the defendant. The court sustained the State's objection to that question, agreeing that it went "to why they made the decision they made." Campbell argued that the question went to the content of both the extraneous material and the conversations in the jury room; the court, however, ruled that Pearn had already testified that there was no extraneous material and it therefore would not allow the question.

During the examination of Phelps, the court disallowed counsel from asking Phelps whether Pearn had told the other jurors that he had recently served on another jury. Counsel suggested that if Pearn had held himself out to the other jurors as having experience in law enforcement and appeared to be an expert on the subject of terroristic threatening, then the other jurors might have given Pearn's opinions "extra respect." The court rejected that argument, finding that a juror's personal life experiences do not constitute extraneous prejudicial information. The court also sustained repeated objections to counsel's attempts to ask Phelps whether the jury had ever discussed Campbell's intent, finding that such questioning went to the jurors' deliberations.

The court ultimately denied Campbell's motion for new trial, finding that it was improper for counsel to attempt to impeach a jury's verdict by affidavits obtained from members of the jury panel. The court likewise found no merit to Campbell's argument that Pearn's alleged expertise constituted extraneous prejudicial information, and it thus denied Campbell's motion for new trial. On this issue, the court made a finding that Pearn's knowledge would not constitute extraneous, prejudicial information. This ruling was correct.

■ This court has held that "knowledge obtained by a juror and brought into the jury room from the ordinary scope of his life experiences, including knowledge obtained through his profession or vocation, does not qualify as " 'extraneous prejudicial information' as contemplated by Rule 606." *Houchins v. Home Care Prof'ls of Ark., Inc.,* 2012 Ark. App. 553, 423 S.W.3d 655; *Blake v. Shellstrom,* 2012 Ark. App. 28, 388 S.W.3d 57; *Milner v. Luttrell, supra.* In *Milner,* this court wrote as follows:

The issue of extraneous prejudicial information has arisen most frequently when jurors have visited an accident scene during trial and reported their observations to other jury members. This case, however, does not involve a juror's foray outside the courthouse to gather extrinsic information. Rather, it involves information that the juror learned prior to trial in the ordinary scope of her life experiences and carried with her into the jury room....

Moreover, the great weight of authority in other jurisdictions is that a juror's professional or vocational knowledge does not qualify as extraneous prejudicial information when brought into the jury room....

In light of these authorities, we conclude that [the juror's] vocational knowledge of medical records and informed consent did not constitute extraneous

prejudicial information under Rule 606(b). The rule therefore prohibited the circuit court from considering Milner's affidavits and testimony and, consequently, the court had no evidence on which to grant a new trial. *See Waterfield v. Quimby*, 277 Ark. 472, 644 S.W.2d 241 (1982).

*Milner*, 2011 Ark. App. 297, at 7–8, 384 S.W.3d at 5–6 [citations omitted]. Likewise, the circuit court here did not err in finding that Pearn's personal and professional background did not constitute extraneous information that had been brought to bear on the jury's deliberations.

■ Similarly, the court did not err in refusing to allow Pearn, Phelps, and Bish to testify about what the allegedly improperly introduced instruction stated and whether the jurors discussed Campbell's intent to commit the crime.

Rule 606(b) states plainly that a juror may not testify as to the effect of anything upon his mind as influencing him to assent to the verdict. *See Veasey v. State*, 276 Ark. 457, 637 S.W.2d 545 (1982). *Certainly, a juror's understanding of the jury instructions and its effect on her deliberation fall within this very prohibition.* *See also Hall v. Levine*, 104 P.3d 222 (Colo.2005) (observing that Colorado Rule of Evidence 606(b), which language mirrors that of Ark. R. Evid. 606(b), applied even if the affidavits ₁₈showed that the jury misunderstood the law or facts, failed to follow instructions, or applied the wrong legal standard); 75B Am.Jur.2d *Trial* § 1625 (2012) ("The rule applies even on grounds such as mistake, misunderstanding of the law or facts, failure to follow instructions, lack of unanimity, or application of the wrong legal standard."); 66 C.J.S. *New Trial* § 235 (2012) ("[O]rdinarily, a juror's claim that he was confused over the law or evidence and therefore participated in the

verdict on an incorrect premise is a matter that inheres in or is intrinsic to the deliberative process and cannot be used to impeach the verdict.").

*Arnold v. State*, 2012 Ark. 400, at 4–5, 2012 WL 5303988 (emphasis added). Because the testimony that Campbell sought to introduce went to the jurors' understanding of the instructions, the circuit court correctly excluded this testimony.

Campbell also argues that the jury misconduct affected his "substantial rights" such that he should be entitled to a "presumption of prejudice." The supreme court and this court have repeatedly held, however, that, following an allegation of juror misconduct, the moving party bears the burden of proving both the misconduct and that a reasonable possibility of prejudice resulted from it; we will not presume prejudice in such situations. *Holsombach v. State*, 368 Ark. 415, 246 S.W.3d 871 (2007); *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002); *State v. Cherry*, 341 Ark. 924, 20 S.W.3d 354 (2000); *Lawson v. State*, 74 Ark.App. 257, 47 S.W.3d 294 (2001).

■ Campbell nonetheless argues that, even if he is not entitled to a presumption of prejudice, he still need show only that a reasonable possibility of prejudice exists. In this regard, he cites to the testimony of Bish, who said that he voted guilty because the other jurors "said it doesn't matter what Mr. Campbell's intent was or what he actually said, it is the fact that [the victim] felt that he was threatened, that qualifies it as terroristic threatening." Campbell maintains that he has demonstrated that "constitutional errors ₁₉resulting from extraneous prejudicial information improperly before the jury both (1) contributed directly to his guilty verdict and (2) resulted in material prejudice against him." To the extent Campbell is raising an argument that "constitutional errors" were made at trial, he never obtained a ruling

on that issue from the circuit court. The failure to obtain a ruling on an issue at the trial court level, including a constitutional issue, precludes review on appeal. *Norris v. State,* 2013 Ark. 205, 427 S.W.3d 626.

### B. Witness Exclusion

■■■ Next, we address Campbell's assertion that the circuit court erred in excluding his attorney's testimony at the new-trial hearing. Campbell asserts that his attorney, Mosemarie Boyd, should have been permitted to testify pursuant to Arkansas Rule of Professional Conduct 3.7(a)(3).[1] Boyd sought to testify at the new-trial hearing in order to provide "rebuttal testimony" to the testimony of jury foreman Phelps's testimony. At the new-trial hearing, the court and Phelps had the following exchange:

> COURT: Mr. Phelps, did you ever relate to [counsel] that there was another set of instructions and that they needed to get that sheet that had explained that terroristic threatening means all that matters is that the victim felt that they were threatened, it doesn't matter what the defendant's intent was, and did you tell her that that was 100 percent correct?
>
> PHELPS: No, Your Honor.... I think once the definition was read on multiple occasions, that is the way it was trying to be explained to Mr. Bish. It does not matter how he felt and received what was said, it was how the victims felt.... I did not ever make the statement that Mr. Bish's summary [of what happened during deliberations] was 100 percent correct.

Boyd wanted to testify that, in her previous conversation with Phelps, Phelps had agreed with what juror Bish had told her concerning the allegedly improper instruction. The circuit court ruled that Phelps had already gone through her affidavit during Phelps's testimony and had made a proffer of her testimony to the court. Therefore, the court did not see the need for Boyd to "get up on the witness stand and tell the court the same thing that you have already told me."

The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Riley v. State,* 2012 Ark. 462, 2012 WL 6218479; *Paschal v. State,* 2012 Ark. 127, 388 S.W.3d 429. Moreover, our supreme court has repeatedly admonished members of the bar that an attorney cannot serve as both a witness and an advocate in the same action. *McIntosh v. Sw. Truck Sales,* 304 Ark. 224, 800 S.W.2d 431 (1990); *Bishop v. Linkway Stores, Inc.,* 280 Ark. 106, 655 S.W.2d 426 (1983); *Milburn v. State,* 262 Ark. 267, 555 S.W.2d 946 (1977). We cannot say that the circuit court, having heard the essence of what Boyd's testimony would be, and being mindful of the proscription on attorneys serving as both witness and advocate, abused its discretion in refusing to allow Boyd to testify.[2]

### II. *Lesser–Included Instructions*

■■■ Campbell next asserts that the circuit court should have instructed the

---

1. That rule provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless ... disqualification of the lawyer would work substantial hardship on the client."

2. Under a separate point heading in his brief, Campbell raises an argument that the circuit

court generally erred in denying his motion for new trial. Although Campbell sets this out as a separate argument, it is essentially an aggregate of his previous claims that his "substantial rights were materially prejudiced" by the alleged jury misconduct, such that the circuit court should have granted his motion for new trial. As set out above, the circuit

jury on the lesser-included offense of terroristic threatening in the second degree. The supreme court has held that terroristic threatening in the second degree is a lesser-included offense of terroristic threatening in the first degree. *Green v. State*, 2012 Ark. 19, 386 S.W.3d 413. Once an offense is determined to be a lesser-included offense, the circuit court is obligated to instruct the jury on that offense only if there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser-included offense. *Id.* A circuit court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510.

A person commits the offense of terroristic threatening in the first degree if, with the purpose of terrorizing another person, he threatens to cause death or serious physical injury or substantial property damage to another person. Ark.Code Ann. § 5–13–301(a)(1)(A) (Repl.2006). A person commits the offense of terroristic threatening in the second degree if, with the purpose of terrorizing another person, he threatens to cause physical injury or property damage to another person. Ark. Code Ann. § 5–13–301(b)(1).

Campbell argues that "sufficient questions of fact existed for the jury—especially with respect to his intent—to warrant the lesser-included offense instruction." We disagree. The evidence supports the decision of the court. The jury heard testimony that, after learning of his wife's firing, Campbell went to the location of his wife's previous employment. While there, he drove his car at a high rate of speed toward the two managers who had terminated her employment. Both managers believed that they were about to be hit by Campbell's operation of his vehicle and were in fear for their safety. Campbell also shouted profanities at the managers, became disruptive inside the restaurant, and eventually made a slashing motion across his neck with his fingers. The managers testified that they understood this action as being a gesture of Campbell's threat to cause death. Additionally, Campbell went to the corporate office and told the receptionist to give a message to the managers. He said, "Can you give Joe and Chris a message for me? Tell them someone is going to die tonight."

Based on this evidence, there was no rational basis for a verdict acquitting Campbell of the offense charged—first-degree terroristic threatening—and convicting him of the lesser-included offense of second-degree terroristic threatening. His words and actions clearly showed both that he had a purpose of terrorizing and that he threatened to cause death or serious physical injury. Because there was no rational basis for acquitting him of first-degree terroristic threatening, the circuit court did not abuse its discretion in refusing to instruct the jury on the lesser offense.

### III. *Mistrial or Admonishment*

In his next point on appeal, Campbell asserts that the circuit court should have admonished the jury or ordered a mistrial when the prosecutor made allegedly racially inflammatory remarks during voir dire and misstated the offense of "aggravated assault" as "aggravated robbery" during opening arguments. Campbell acknowledges that he failed to object at either instance of alleged misconduct, but he asserts that the court should consider his assignment of error pursuant to *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

court did not err in finding that no jury misconduct occurred; accordingly, the court did not err in denying Campbell's new-trial motion.

The allegedly offensive comments during voir dire occurred when the State, in an apparent attempt to describe reasonable doubt for the venire, made the following statement, without comment or objection from Campbell:

But would you agree that if there was a doubt that today there could be a monkey in the ceiling? Is that reasonable? You kind of see a difference there. If I said that there is [sic] no monkeys in the ceiling, the State proves that there is no monkeys in this building, you know, we sent an inspector up there. At the same time, do you understand what I mean? I'm sorry. I'm confusing everybody.

The State also, during its opening statements, asserted that Campbell had been charged with aggravated robbery. The court interjected a few moments later and advised the prosecutor that he had made a misstatement; the prosecutor replied, "I'm sorry, aggravated assault, Your Honor, I misspoke, aggravated assault."

On appeal, Campbell argues that, because Campbell is African–American, the prosecutor's remarks about monkeys were "so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury not to consider the same." Campbell also argues that the State's misnomer of the offense with which he had been charged was also highly prejudicial, such that the circuit court should have intervened on its own under the third so-called *Wicks* exception to correct the "resulting prejudice."

██ This exception "relates to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial." *Wicks*, 270 Ark. at 786, 606 S.W.2d at 369. In *Lard v. State*, 2014 Ark. 1, at 27, 431 S.W.3d 249, 268, the supreme court explained that it is clear that the *Wicks* exceptions are to be rarely applied and that "the third exception is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof." *Id.* (citing *White v. State*, 2012 Ark. 221, 408 S.W.3d 720). The allegedly offensive comment by the prosecutor, which was an awkward attempt to explain reasonable doubt, does not rise to the level of offensiveness required by *Wicks*. Moreover, Campbell fails to demonstrate that the comments were intended to communicate racial bias or prejudice. As to the "aggravated robbery" malapropism, Campbell cannot claim to have been prejudiced by the prosecutor's words, as the jury acquitted him of the aggravated-assault charge. Simply put, having failed to object to the comments below, Campbell cannot raise these arguments for the first time on appeal.

### IV. *Cumulative Error*

Finally, Campbell argues that cumulative error should serve "as a basis for remand for retrial." Cumulative error is entertained only in rare and egregious cases, and we reverse only when the cumulative effect of errors denied the defendant a fair trial. *Childress v. State*, 322 Ark. 127, 907 S.W.2d 718 (1995); *Bell v. State*, 2011 Ark. App. 5, 2011 WL 51466. Moreover, we cannot reverse based on cumulative error unless those alleged errors are actual errors. *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003). Because, as discussed above, no reversible error exists, then no cumulative error exists. *Bell, supra.*

Affirmed.

HARRISON and WOOD, JJ., agree.