SLIP OPINION

Cite as 2014 Ark. App. 686

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–14–66

|  |  |  |
|---|---|---|
| ANDREW J. CODY | | **Opinion Delivered** December 3, 2014 |
| | APPELLANT | |
| | | APPEAL FROM THE POPE COUNTY CIRCUIT COURT |
| V. | | [NO. CR-12-277] |
| | | HONORABLE WILLIAM M. PEARSON, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Andrew J. Cody was charged with one count of first-degree murder of Lee Britton and one count of aggravated residential burglary. The Pope County Circuit Court denied Cody's request to instruct the jury on manslaughter on the murder charge, and the jury found him guilty of the lesser-included offense of second-degree murder. The jury acquitted Cody of aggravated residential burglary. He was sentenced to twenty years in the Arkansas Department of Correction. Cody subsequently filed a motion for new trial, arguing that the prosecutor had engaged in "reverse vouching" due to inappropriate behavior during closing arguments and the sentencing phase of the trial. The circuit court denied Cody's motion. On appeal, Cody challenges the circuit court's rejection of his request for a

manslaughter instruction and the court's denial of his motion for new trial. We find no error and affirm.

## I. *Background Facts*

Cody was married to Sheena Cody. They are the parents of a then five-year-old daughter, H.C., and a son, B.C. Cody and Sheena separated, and the separation essentially resulted in Sheena being homeless for some time. Eventually, Sheena rented a room from Britton in March 2012. Britton, unbeknownst to Sheena or Cody, had previous "true" findings for sexual assault from the Arkansas Department of Human Services (DHS).

On May 12, 2012, Latricia Brown, a family service worker specialist with DHS, responded to a "Priority One" call at Britton's home. Based upon the previous "true" finding for sexual assault committed by Britton, DHS was investigating Sheena's residence at Britton's home and the exposure of Sheena and Cody's children to Britton. DHS instructed Sheena to remove the children from Britton's home immediately. At the time of Brown's visit, B.C. was with Sheena at Britton's home, but H.C., who was in Cody's care, was not present. Sheena contacted Cody about the DHS involvement, and Cody went to get B.C.

On the drive to Britton's house, H.C. told Cody that Britton had molested her. When Cody arrived at Britton's house, Cody revealed H.C.'s disclosure to Brown. She explained to him that he needed to call the Crimes Against Children Division (CACD) to report the alleged molestation. Enraged, Cody went inside Britton's house, asking why Britton touched his daughter. Britton denied the allegation, saying, "I don't know why she would say that." After that, Cody left Britton's house and called CACD.

Cite as 2014 Ark. App. 686

CACD began its investigation the next day, May 13, 2012, and conducted interviews with Sheena, Cody, and H.C. CACD also set up a physical exam for H.C. Additionally, Cody was informed that Britton was scheduled to report to law enforcement with his attorney on May 18, 2012.

After DHS became involved on May 12, Sheena began staying at motel rooms paid for by Britton. Sometimes Cody and the children stayed with her; Cody was aware that Britton was paying for the rooms. On May 18, Cody, Sheena, and the children had been swimming at a motel pool. The room had been paid for by Britton. After they checked out, Cody returned Sheena to Britton's home because Sheena had nowhere else to go. As the two argued, Sheena related to Cody that Britton had offered to buy her a trailer and some land "to just let this go away." Cody replied that she "could do whatever the hell she wanted to but there ain't no damn way [he] was gonna do anything." Cody dropped Sheena off at Britton's house and took the children home with him. Because Britton was not home at the time, Sheena went across the street to her friend Kristina's house.

About twenty minutes later, Cody returned to Britton's house with the children still with him. He entered Britton's house, leaving the children in the vehicle but taking his .12-gauge shotgun with him. After determining that Sheena was not present, Cody put the gun down in a bedroom.

Leaving Britton's home, Cody found Sheena across the street at Kristina's house. He told her that she did not have to stay with Britton. Cody and Sheena got in the truck and left, but a few hundred yards down the road, Cody "just stopped and got out" because he

3

"just had to go talk" to Britton. Cody said that he intended to confront Britton and force him to confess to molesting H.C. He explained that he was "going to [beat] him up; [he] didn't have the intention of killing him." Cody told Sheena to take the truck and drive to his father's house with the children.

Cody returned to Britton's house, walking through the woods so he would not be seen. After he ascertained that Britton was still not home, he got his gun out of the bedroom and "sat down on a living room chair, lit a cigarette, and waited." As he waited, he thought about "what evidence could place [him] in the house," so he found some plastic bags to cover his shoes so he would not leave footprints. He also pulled on a long-sleeved shirt so he "wouldn't get any blood" on himself.

Moments later, Britton arrived home. As he entered the house, Cody stepped out of the bedroom with the shotgun pointed at Britton. Cody asked Britton why he molested H.C.; according to Cody, Britton looked at him, smiled, and said, "that fucking little bitch is lying." At that moment, Cody "just reacted" and shot Britton in the head. Cody then made sure Britton was dead, said "a few choice words," picked up the shotgun shell, and left.

Cody was arrested shortly thereafter. In his first statement to police, he initially denied killing Britton. Moments later, however, he told the detective that he was frustrated by the slow pace of the police investigation into Britton's abuse of H.C. He also expressed disgust with Britton's attempts to "buy" Sheena by offering her money and property to keep from prosecuting him. Cody explained that when he told Britton that H.C. had accused him of molesting her, Britton said "that little bitch is lyin'," and Cody shot him in the head. Cody

SLIP OPINION

asserted that he really only wanted to talk to Britton and beat him up to make him confess what he had done to H.C., but when Britton called H.C. a liar, Cody just "drew a bead on him and . . . pulled the trigger."

## II. *Manslaughter Instruction*

In his first argument on appeal, Cody argues that the circuit court erred in refusing to allow the jury to consider manslaughter as a lesser-included offense. A person commits manslaughter if the person causes the death of another person under circumstances that would be murder, except that he or she causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. Ark. Code Ann. § 5-10-104(a)(1)(A) (Repl. 2006). The reasonableness of the excuse is determined from the viewpoint of a person in the defendant's situation under the circumstances as he or she believes them to be. Ark. Code Ann. § 5-10-104(a)(1)(B).

Cody proffered a jury instruction on manslaughter, arguing that there was evidence that he had acted under extreme emotional disturbance. A jury instruction on extreme-emotional-disturbance manslaughter under section 5-10-104(a)(1) requires evidence that the defendant killed the victim following provocation such as "physical fighting, a threat, or a brandished weapon." *Pollard v. State*, 2009 Ark. 434, 336 S.W.3d 866; *Boyle v. State*, 363 Ark. 356, 214 S.W.3d 250 (2005); *Kail v. State*, 341 Ark. 89, 94, 14 S.W.3d 878, 881 (2000). Moreover, in *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992), the supreme court examined the level of passion resulting from a provocation that may reduce a homicide from

SLIP OPINION

murder to manslaughter as follows:

> [M]ere threats or menaces, where the person killed was unarmed and neither committing nor attempting to commit violence on the defendant at the time of the killing, will not free him of the guilt of murder.

310 Ark. at 423, 837 S.W.2d at 455 (quoting *Wootton v. State*, 232 Ark. 300, 337 S.W.2d 651 (1960)). The court explained further, however, that "adequate provocation can occur when the victim is armed or is attempting to commit violence toward the defendant." *Id.* at 423–24, 837 S.W.2d at 455–56.

In the instant case, the circuit court, finding that there was no evidence of the provocation necessary to give a manslaughter instruction, declined Cody's proffer. The law is well settled on lesser-included-offense jury instructions. It is reversible error to refuse to instruct on a lesser-included offense when there is the slightest evidence to support the instruction. *Morris v. State*, 351 Ark. 426, 94 S.W.3d 913 (2003); *Taylor v. State*, 2009 Ark. App. 627, 331 S.W.3d 597. The appellate courts have further made it clear that we will affirm a trial court's decision not to give an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *Morris*, *supra*. An appellate court will not reverse a trial court's decision regarding the submission of such an instruction absent an abuse of discretion. *Davis v. State*, 2011 Ark. 433 (per curiam); *Boyle v. State*, 363 Ark. 356, 214 S.W.3d 250 (2005).

On appeal, Cody argues that the facts of his case warranted a manslaughter instruction. Specifically, he contends that, having learned that Britton had sexually molested his five-year-old daughter, he was reasonably incited to an irresistible passion when Britton smiled and said

"that fucking little bitch is lying." He urges that he was in a "heightened state of upset about his child's circumstances and the threat that Britton posed to any child, but especially his own." Cody asserts that Britton's smile and his statement that H.C. was a liar were the actions that provoked him or induced the necessary passion to pull the trigger. We disagree.

In short, the facts of this case do not give rise to the provocation necessary to warrant the giving of an extreme-emotional-disturbance-manslaughter instruction. There was no evidence that Britton was armed; in fact, Cody even conceded that Britton was not carrying or brandishing a weapon. Cody asserts that Britton's statement, along with Cody's knowledge of Britton's past, gave rise to the necessary provocation. He further urges that "whether the excuse is reasonable is determined from the viewpoint of a person in the actor's situation under the circumstances as the actor believed them to be." Ark. Code Ann. § 5-10-104(a)(1)(B). Therefore, Cody contends that, because a person in his situation would reasonably be enraged by Britton's actions and words, the court should have instructed the jury on extreme-emotional-disturbance manslaughter.

The supreme court rejected a similar argument in *Pollard v. State*, 2009 Ark. 434, 336 S.W.3d 866. There, Pollard killed the victim with a sawed-off shotgun. Pollard argued entitlement to an extreme-emotional-disturbance-manslaughter instruction because he was aware of the victim's violent reputation and feared him. He also urged that the victim showed him a gun in the waistband of his pants on the night of the killing. At the time of the shooting, Pollard believed the victim was armed and intended to kill him. The victim, however, was unarmed. The supreme court rejected Pollard's argument that the court erred

in refusing to give the manslaughter instruction. The court acknowledged that Pollard was afraid of the victim and believed he had a gun, but there was "no testimony or other evidence that [the victim] actually threatened Pollard with a gun at the time of the killing." *Id*. at 7–8; 336 S.W.3d at 870. The court concluded that the victim's alleged threats did not provide a rational basis for the manslaughter instruction, because "mere threats or menaces, where the person killed was unarmed and neither committing nor attempting to commit violence on the defendant at the time of the murder, will not free him of the guilt of murder." *Id*. at 10, 336 S.W.3d at 871.

Here, even assuming that Britton's admittedly crude and taunting words about Cody's child constituted a threat, *Pollard* holds that "mere threats or menaces" are insufficiently provocative when the person killed was not armed and was not committing a violent act against the defendant. The circuit court therefore did not abuse its discretion in refusing to give the instruction.

### III.  *Motion for New Trial*

In his second point on appeal, Cody challenges the circuit court's denial of his motion for new trial. The decision whether to grant or deny a new trial lies within the sound discretion of the trial court, and this court will reverse that decision only if there is a manifest abuse of discretion. *Smart v. State*, 352 Ark. 522, 104 S.W.3d 386 (2003); *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002). A trial court's factual determinations on a motion for a new trial will not be reversed unless clearly erroneous, and the issue of witness credibility

is for the trial court to weigh and assess. *Campbell v. State*, 2014 Ark. App. 171, 432 S.W.3d 673.

Cody sought a new trial based on allegations that he was denied a fair trial due to the deputy prosecuting attorney's "impermissible commentary on the credibility of defense witnesses." That "commentary" consisted of her "grinning, laughing, and rolling her eyes to indicate the defense witnesses' testimony was not credible." Cody attached several affidavits to his motion in which various witnesses asserted that they had observed the prosecutor's actions and felt that her behavior had distracted the jurors.

The circuit court held a hearing on the motion. The testimony of appellant's witnesses essentially reiterated the averments contained in the affidavits attached to the motion. The circuit court also heard from court security personnel who testified there had been no jury distraction throughout the proceedings.

The circuit court denied Cody's motion for new trial, first noting that nothing happened during the course of the trial that was serious enough to require the court to intervene. The court further found that there was no evidence that jurors could have been or were influenced by the alleged behavior. The court noted that the jurors were presumed to have followed the court's instructions, and it said that it was unwilling to make the assumption that the jurors did not do so. Finally, the court noted discrepancies between the witnesses' testimony at the hearing and found that their statements were not credible. The court concluded:

> I will emphasize that in the court's observance of this trial and the jury, they were focused on the witnesses in this case. Their attention was not distracted from that.

They were not influenced by anything extraneous to what their role and function was in this trial, and there's not been any evidence presented to indicate otherwise.

On appeal, Cody argues that the prosecutor's actions amounted to "reverse vouching," or negatively opining on the credibility of the defense's witnesses, and the circuit court therefore erred in denying his motion for new trial. We disagree. Here, the evidence offered at the new-trial hearing was that the prosecuting attorney rolled her eyes and made faces during the questioning of defense witnesses. There was, however, no evidence, such as testimony from a juror, that Patton's actions distracted the jury, let alone swayed its decision making.

This court has noted that, although it is within a trial court's discretion to grant a new trial when a verdict is rendered against a defendant by which his substantial rights have been prejudiced, there must be a showing of the prejudice suffered and that the defendant did not receive a fair and impartial trial. *Dail v. State*, 2013 Ark. App. 184. Here, the circuit court made factual findings that the jury was not distracted or influenced by the prosecuting attorney's actions, and those findings were supported by the evidence introduced at the new-trial hearing. Cody failed to point to a single juror whose decision was swayed by the prosecutor's conduct. In the absence of a demonstration of prejudice, we cannot say that the circuit court abused its discretion in denying Cody's motion for new trial.

Affirmed.

PITTMAN and GLOVER, JJ., agree.

*Debra J. Reece*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.