SLIP OPINION

Cite as 2015 Ark. App. 498

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-14-696

| | |
|---|---|
| ALBERTO DELATORRE<br>APPELLANT | Opinion Delivered September 23, 2015 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CR-2013-1427-1] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE WILLIAM A. STOREY, JUDGE |
| | AFFIRMED |

## BART F. VIRDEN, Judge

A Washington County jury found appellant Alberto Delatorre guilty of being an accomplice to aggravated robbery and theft of property, and he was sentenced to ten years' imprisonment and ordered to pay a $250 fine. His sole argument on appeal is that "[t]he court erred in instructing appellant's counsel to sit down and presumably to shut up following the prosecutor's misconduct in her rebuttal closing argument of accusing appellant's counsel of being dishonest and of telling lies, informing the jury that there had been plea negotiations and stating to the jury that appellant's counsel knows that his client is guilty and where the court otherwise gave credence to and reinforced the prosecutor's misconduct."[1] We affirm.

---

[1]In *Delatorre v. State*, 2015 Ark. App. 274, this court ordered rebriefing.

SLIP OPINION

## I.  *Factual Background*

Because Delatorre does not challenge the sufficiency of the evidence supporting his convictions, only a brief recitation of the facts is necessary. At approximately 2:45 a.m. on July 19, 2013, a taxi-van driver was parked in a parking lot smoking a cigarette and updating his log book. The driver saw three men walking toward him. The victim described them as a heavyset Hispanic man, a young black man, and a man who appeared to be Asian and was later identified as Delatorre. The Hispanic man and Delatorre approached the driver and asked him for a cigarette. The black man came from behind them and pulled a machete out of his shorts. He grabbed the victim by the throat and demanded that he give them his money. The driver gave the men a money bag, his wallet, cigarettes, and a cell phone, and the men ran away but were later apprehended by police.

## II.  *Closing Arguments*

After the prosecutor's closing argument, defense counsel made the following remarks in his closing argument:

- "Police officers and prosecutors presume guilt in everything that they do, say, think and breathe."

- "[The prosecutor's] speech was a starry-eyed, dreamy-eyed, imaginary thing that is not worth listening to or remembering."

- "When a prosecutor has got a good case they don't have to stretch it like that. They don't have to get emotional. They don't have to shout. . . . When prosecutors stretch and strain like that, you got to wonder, well does she have

anything more important to talk about?"

• "You can argue all the bunk that you want to . . . ."

• "[T]he prosecutor is trying to invent things to argue about what [Delatorre] did."

• "I don't know what the prosecutor is squawking about."

Defense counsel then said

I can't help but note that they're prosecuting in reverse here. Usually they'll cut a deal with the lesser involved in order to produce a witness for the greater involved. Ask yourself the simple question, why did they go in reverse in this case? Why did they cut a deal with the obviously guilty guy who did help by doing the cigarette trick and distracting the guy and then who got into the cab and got the money. That's the reason he pled guilty. Even he got the reduced charge. So why was it they'd cut a deal with him to provide testimony against this one? Because they knew they needed testimony against this one because they were thin, I've never seen backward prosecution like this in forty years.

In the prosecutor's rebuttal closing argument, she said

Is [defense counsel] upset about what I said? Yeah. Because he knows his guy was guilty at the end of the day. He doesn't like my style of closing argument but at least I'm honest, because he got up here and told you something he knew wasn't true and let me tell you what that is. He told you that we did a reverse prosecution on this case. That somehow we first offered Marcos a deal, cut a deal with him so he would testify against the Defendant because we didn't have enough on the Defendant. Now, [defense counsel] has represented this Defendant for a while. He and I have had a lot of conversations about what to do with his client. I made him the very same offer that I made to Marcos and he knows it. So that's just a lie that he got up and told you and I'm quite frankly surprised he would do that. That's not how I operate, that's not how I am and quite frankly, the State doesn't operate that way. We're not a bunch of conviction hungry prosecutors down there.

. . . .

And I think [defense counsel] got up here and was dishonest with you guys about me, and I feel like I need to defend myself a little bit. He knows his client got offered the same deal, why? Well, I thought that was fair.

3



At that point, defense counsel said, "Your Honor, that's the second time she's said that. I'll tell the Court what her offer is if the Court would hear it." The trial judge said, "Mr. Davis, you sit down. The prosecutor has an obligation and a responsibility to respond to what you have said in your closing argument. You may proceed."

### III.   *Motion for New Trial*

Delatorre moved for a new trial based on the prosecutor's alleged misconduct in that she (1) argued matters not in evidence, (2) informed the jury that there had been plea bargaining and misstated the offer, (3) implied that defense counsel believed his client was guilty, (4) implied that defense counsel made offers to settle, and (5) impugned the honesty of defense counsel. The trial court, in denying the motion, ruled that defense counsel had opened the door for the prosecutor's remarks and that Delatorre had not been prejudiced by those remarks.

### IV.   *Standards of Review*

The trial court is given broad discretion to control counsel in closing arguments, and an appellate court does not interfere with that discretion absent a manifest abuse of discretion. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). Closing remarks that require reversal are rare and require an appeal to the jurors' passions. *Id*. Furthermore, the trial court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Id*.

The decision whether to grant or deny a new trial lies within the sound discretion of the trial court, and this court will reverse that decision only if there is a manifest abuse of discretion. *Cody v. State*, 2014 Ark. App. 686, 449 S.W.3d 712. A trial court's factual



determinations on a motion for new trial will not be reversed unless clearly erroneous, and the issue of witness credibility is for the trial court to weigh and assess. *Id*.

## V. *Argument*

Delatorre argues that the prosecutor's personal attacks against defense counsel obviously resulted in jury bias and suggested that anything said by defense counsel was unworthy of belief or even consideration. Delatorre contends that, "Ordinarily, the defense counsel who is the target of such a tirade and personal attack upon the lawyer, would move to strike or move for mistrial, but in this case the Court stated 'Mr. Davis, you sit down.'"

## VI. *Discussion*

In *Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999), our supreme court recognized that the steps required for preservation of error when a trial court *sustains* an objection to closing argument should not govern the preservation of error when a trial court *overrules* a similar objection. *Id*. at 356, 5 S.W.3d at 453. The supreme court noted that

> when an objection to the prosecutor's closing argument is overruled by the trial court, an appellant has been given none of the relief requested. Rather, the trial court has ruled that no misconduct has occurred. To require a request for further relief at that point in order to preserve the issue for review would serve no purpose. Once the trial court rejects a claim of improper argument, there is no reason for it to consider a request for further relief.

*Id*. at 355–56, 5 S.W.3d at 453.

To the extent that defense counsel's objection is otherwise preserved, we agree with the trial court that defense counsel opened the door for the prosecutor's rebuttal. Although distinguishable in that the appellant moved for a mistrial and an admonition was given to the jury, in *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996), defense counsel in his closing

argument asserted that the State had wasted the jury's time trying the appellant because the State had already gotten a death sentence against the appellant in an unrelated capital-murder case. Defense counsel asked for the minimum sentence for the appellant, insisting that the death sentence would be carried out. In rebuttal, the State said, "Ladies and gentlemen, [defense counsel] argues to you that you know that the death penalty will be carried out. Do you know that?" On appeal, our supreme court held that

> [a]ppellant's counsel devoted his entire closing argument to the impact of appellant's death sentence in the unrelated case on his sentence in this case. When reviewing the deputy prosecutor's remark in light of these circumstances, we do not view it as an appeal to the jurors' passions, but as a rebuttal of appellant's own closing remarks. We have recognized the propriety of "fighting fire with fire" when one of the parties makes an improper closing argument. By opening the door, that which might have been impermissible becomes permissible. Because appellant opened the door to the prosecutor's closing remarks, we cannot say that the trial court erred in refusing to grant a mistrial.

*Id.* at 532, 932 S.W.2d at 759 (citations omitted).

Likewise, the prosecutor here fought fire with fire. The prosecutor was entitled to defend herself and attempt to set the record straight. We cannot say that the trial court abused its discretion in how it handled the objection at trial or later in denying Delatorre's motion for new trial.

Also, we agree with the trial court's conclusion that Delatorre cannot show that any prejudice resulted from the prosecutor's rebuttal. For aggravated robbery, a Class Y felony, Delatorre could have received up to forty years in prison, yet he received the minimum sentence of ten years. Ark. Code Ann. § 5-4-401(a)(1) (Repl. 2013). Similarly, on the theft-of-property conviction, a Class D felony, the jury could have sentenced Delatorre to serve

up to six years in prison, Ark. Code Ann. § 5-4-401(a)(5), or pay a fine not to exceed $10,000, Ark. Code Ann. § 5-4-201(a)(2) (Repl. 2013), or both. Delatorre received no prison time and was ordered to pay a fine of only $250.

Affirmed.

GLOVER and VAUGHT, JJ., agree.

*Erwin L. Davis*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.